

# Summons in Civil Case

IN THE 40TH JUDICIAL CIRCUIT, MCDONALD COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>CHARLES SPENCER GENISIO | Case Number: 26MC-CV00092 |
| Plaintiff/Petitioner:<br>CARSON THOMAS NETTLE<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>CHRISTIAN T MISNER<br>1108 OLIVE STREET<br>SUITE 200<br>ST LOUIS, MO 63101 |
| Defendant/Respondent:<br>CLAYTON HOMES #689 | Court Address:<br>P.O BOX 157<br>602 MAIN<br>PINEVILLE, MO 64856 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp for Return) |

The State of Missouri to: **CLAYTON HOMES #689**
**Alias:**
**12950 EAST HWY 86**
**NEOSHO, MO 64850**

Other Addresses:

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**COURT SEAL OF**

**MCDONALD COUNTY**

28-JAN-2026
Date

Clerk

**Further Information:**



EXHIBIT
A

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-41**
1 of 2 (26MC-CV00092)

Civil Procedure Form No. 1, SCR 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address) in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____      _____
Printed Name of Officer or Server               Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____   _____
                                               Date                          Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-41**
2 of 2 (26MC-CV00092)                          Civil Procedure Form No. 1, SCR 54.01 – 54.05,
                                        54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo
Case 3:26-cv-05017-MDH      Document 1-1      Filed 03/06/26      Page 2 of 63



# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 40TH JUDICIAL CIRCUIT, MCDONALD COUNTY, MISSOURI

| Judge or Division:<br>CHARLES SPENCER GENISIO | Case Number: 26MC-CV00092 | |
|---|---|---|
| Plaintiff/Petitioner:<br>CARSON THOMAS NETTLE<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>Christian T Misner<br>1108 OLIVE STREET<br>SUITE 200<br>ST LOUIS, MO 63101 | |
| Defendant/Respondent:<br>CLAYTON HOMES #689 | Court Address:<br>P.O BOX 157<br>602 MAIN<br>PINEVILLE, MO 64856 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to: CMH HOMES, INC.**
**Alias:**

**5000 CLAYTON ROAD**
**MARYVILLE, TN 37804**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

**COURT SEAL OF**

**MCDONALD COUNTY**

_28-JAN-2026_
Date

_Amy Campbell_
Clerk

**Further Information:**

SJRC (12-24) SM60 (SMOS) *For Court Use Only:* **Document ID # 26-SMOS-8** 1 of 3 26MC-CV00092) SCR 54.06, 54.07, 54.14, and 54.20; 506.500, 506.510 RSMo

Case 3:26-cv-05017-MDH   Document 1-1   Filed 03/06/26   Page 3 of 63

## Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.

2. My official title is _____ of _____ County, _____ (state).

3. I have served the above Summons by: (check one)

   ☐ delivering a copy of the summons and petition to the defendant/respondent.

   ☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

   ☐ (for service on a corporation) delivering a copy of the summons and petition to:

   _____ (name) _____(title).

   ☐ other: _____.

Served at _____ (address) in _____ (County), _____ (state), on _____(date) at _____ (time).

_____          _____
Printed Name of Officer or Server          Signature of Officer or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month), _____ (year).

I am: (check one)  ☐ the clerk of the court of which affiant is an officer.

☐ the judge of the court of which affiant is an officer.

☐ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).

*(Seal)*

☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

**Service Fees**

Summons   $_____
Non Est   $_____
Mileage   $_____ (_____ miles @ $._____ per mile)
**Total**   $_____

See the following page for directions to officer making return on service of summons.

SJRC (12-24) SM60 (SMOS) *For Court Use Only:* **Document ID # 26-SMOS-8**   2 of 3 26MC-CV00092   SCR 54.06, 54.07, 54.14, and 54.20; 506.500, 506.510 RSMo

Case 3:26-cv-05017-MDH   Document 1-1   Filed 03/06/26   Page 4 of 63



# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 40TH JUDICIAL CIRCUIT, MCDONALD COUNTY, MISSOURI

| Judge or Division:<br>CHARLES SPENCER GENISIO | Case Number: 26MC-CV00092 | |
|---|---|---|
| Plaintiff/Petitioner:<br>CARSON THOMAS NETTLE<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>Christian T Misner<br>1108 OLIVE STREET<br>SUITE 200<br>ST LOUIS, MO 63101 | |
| Defendant/Respondent:<br>CLAYTON HOMES #689 | Court Address:<br>P.O BOX 157 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Tort | 602 MAIN<br>PINEVILLE, MO 64856 | |

The State of Missouri to: VANDERBILT MORTGAGE AND FINANCE
Alias:

**P.O. BOX 9800**
**MARYVILLE, TN 37802**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

**COURT SEAL OF**

**MCDONALD COUNTY**

28-JAN-2026
_____
Date

_____
Clerk

**Further Information:**

SJRC (12-24) SM60 (SMOS) *For Court Use Only:* Document ID # 26-SMOS-9    4 of 3 26MC-CV00092)    SCR 54.06, 54.07, 54.14, and 54.20; 506.500, 506.510 RSMo

Case 3:26-cv-05017-MDH    Document 1-1    Filed 03/06/26    Page 5 of 63

## Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.

2. My official title is _____ of _____ County, _____ (state).

3. I have served the above Summons by: (check one)

   ☐ delivering a copy of the summons and petition to the defendant/respondent.

   ☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

   ☐ (for service on a corporation) delivering a copy of the summons and petition to:

   _____ (name) _____ (title).

   ☐ other: _____.

Served at _____ (address)

in _____ (County), _____ (state), on _____ (date)

at _____ (time).

_____     _____
Printed Name of Officer or Server              Signature of Officer or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month), _____ (year).

I am: (check one) ☐ the clerk of the court of which affiant is an officer.

☐ the judge of the court of which affiant is an officer.

☐ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).

☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

**Service Fees**

Summons   $_____
Non Est   $_____
Mileage   $_____ (_____ miles @ $._____ per mile)
**Total**   $_____

See the following page for directions to officer making return on service of summons.

SJRC (12-24) SM60 (SMOS) *For Court Use Only:* Document ID # 26-SMOS-9   5 of 3  26MC-CV00092)   SCR 54.06, 54.07, 54.14, and 54.20; 506.500, 506.510 RSMo

Case 3:26-cv-05017-MDH   Document 1-1   Filed 03/06/26   Page 6 of 63

Electronically Filed - MCDONALD - January 29, 2026 - 04:13 PM

# IN THE CIRCUIT COURT OF MCDONALD COUNTY
## STATE OF MISSOURI

**CARSON THOMAS NETTLE,**

|  |  |  |  |
|---|---|---|---|
| Plaintiff, | ) | | |
| | ) | | |
| | ) | Case No. | 26MC-CV00092 |
| v. | ) | | |
| | ) | | |
| **CLAYTON HOMES OF NEOSHO,** | ) | | |
| a business operating in Missouri | ) | | |
| d/b/a CLAYTON HOMES #689, | ) | | |
| | ) | | |
| | ) | | |
| **CMH HOMES, INC.,** | ) | | |
| a Tennessee corporation, and | ) | | |
| | ) | | |
| | ) | | |
| **VANDERBILT MORTGAGE** | ) | | |
| **AND FINANCE, INC.,** | ) | | |
| a Tennessee corporation, | ) | | |
| | ) | | |
| Defendants. | ) | JURY TRIAL DEMANDED | |

## ORDER APPOINTING SPECIAL PROCESS SERVER

On Plaintiff's Motion for Special Process Server, this court hereby appoints ABC Legal

Services to designate and assign a special process server to effectuate service of process for all the

above-named defendants in the above-captioned action.

**IT IS SO ORDERED.**

/s/Charles Genisio by Amy Campbell      1/30/2026
Judge                                     Date

Court Clerk

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

## IN THE CIRCUIT COURT OF MCDONALD COUNTY
### STATE OF MISSOURI

CARSON THOMAS NETTLE,

    Plaintiff,

v.

**CLAYTON HOMES OF NEOSHO,**
a business operating in Missouri
d/b/a CLAYTON HOMES #689,

Issue Summons To:
Clayton Homes
12950 East Highway 86
Neosho, MO 64850

**CMH HOMES, INC.,**
a Tennessee corporation, and

Issue Summons To:
C T Corporation System
5661 Telegraph Road; Ste. 4B
St. Louis, MO 63129-4275

**VANDERBILT MORTGAGE
AND FINANCE, INC.,**
a Tennessee corporation,

Issue Summons To:
C T Corporation System
5661 Telegraph Road; Ste. 4B
St. Louis, MO 63129-4275

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

Division No. _____

JURY TRIAL DEMANDED

### PETITION FOR DAMAGES

Plaintiff Carson Thomas Nettle, by and through his attorneys, Donner Applewhite, Attorneys at Law, brings this Complaint against Defendants CMH Homes, Inc. d/b/a Clayton Homes #689, and Vanderbilt Mortgage and Finance, Inc., and alleges as follows:

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Carson Thomas Nettle is an individual who, at all times relevant to this Petition, was a resident of McDonald County, Missouri, and currently resides at 55 Post Oak Drive, Seligman, Missouri 65745.

2. Defendant Clayton Homes of Neosho is a business operating in Missouri under the name Clayton Homes #689, with its principal place of business located at 12950 East Highway 86, Neosho, Missouri 64850. Clayton Homes of Neosho is engaged in the business of selling manufactured homes to consumers in Missouri and is subject to personal jurisdiction in Missouri.

3. Defendant CMH Homes, Inc. is a Tennessee corporation with its principal place of business located at 5000 Clayton Road, Maryville, Tennessee 37804. CMH Homes, Inc. is the parent company of Clayton Homes of Neosho and conducts substantial business in Missouri, including the sale and distribution of manufactured homes. CMH Homes, Inc. is registered to do business in Missouri and is subject to personal jurisdiction in this Court.

4. Defendant Vanderbilt Mortgage and Finance, Inc. is a Tennessee corporation with its principal place of business located at P.O. Box 9800, Maryville, Tennessee 37802. Vanderbilt Mortgage and Finance, Inc. is engaged in the business of providing financing for manufactured home purchases and servicing mortgage loans in Missouri. Vanderbilt is an affiliate of CMH Homes, Inc., sharing common ownership as wholly-owned subsidiaries of the same parent company. Vanderbilt is registered to do business in Missouri and is subject to personal jurisdiction in this Court.

5. At all times relevant to this Petition, Defendants CMH Homes, Inc., Clayton Homes of Neosho, and Vanderbilt Mortgage and Finance, Inc. were affiliated entities operating in a coordinated manner to sell manufactured homes and provide financing to Missouri consumers.

2

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

6. This Court has subject matter jurisdiction over this action pursuant to Article V, Section 14 of the Missouri Constitution, as this is a civil action seeking damages in excess of Twenty-Five Thousand Dollars ($25,000.00).

7. Venue is proper in this Court because Defendants conduct substantial business in this county, the property at issue is located in this county, and the acts giving rise to this lawsuit occurred in substantial part in this county.

## NATURE OF THE ACTION

8. This is an action for damages arising from Defendants' deceptive, fraudulent, and unlawful conduct in connection with the sale and financing of a manufactured home to Plaintiff. Defendants engaged in a bait-and-switch scheme by contracting to sell Plaintiff a specific manufactured home, then delivering a different home while concealing the substitution through fraudulent documentation. The contracted home was secretly sold to another buyer. Defendants then perpetuated this fraud through systematic mismanagement of Plaintiff's mortgage and escrow accounts, causing substantial financial and emotional harm to Plaintiff.

## GENERAL FACTUAL ALLEGATIONS

9. In October 2022, Plaintiff was in the market to purchase a manufactured home for his residence.

10. On or about October 14, 2022, Plaintiff visited the Clayton Homes #689 retail location in Neosho, Missouri, and was shown a manufactured home that he desired to purchase.

11. Plaintiff was told by Defendant CMH Homes' sales representative that the home could be delivered "as soon as possible," within approximately two weeks following the placement of concrete footers, which would take approximately seven days to cure.

3

12. On October 18, 2022, Plaintiff entered into a written Sales Agreement with Defendant CMH Homes, Inc. d/b/a Clayton Homes #689 for the purchase of a manufactured home specifically identified as Model 35MYO16763AH22, Serial Number CBH036032TX, for a total purchase price of $95,565.84. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit 1 and incorporated herein by reference.

13. The Sales Agreement constituted a binding contract between Plaintiff and Defendant CMH Homes, Inc., whereby CMH Homes agreed to sell and deliver the specifically identified manufactured home to Plaintiff.

14. At the time Plaintiff signed the Sales Agreement, he reasonably relied on Defendants' representations that the manufactured home identified in the Sales Agreement (Model 35MYO16763AH22, Serial Number CBH036032TX) would be the home manufactured, delivered, and sold to him.

15. To finance the purchase, Plaintiff applied for and obtained a loan from Defendant Vanderbilt Mortgage and Finance, Inc., an affiliate of Defendant CMH Homes, Inc.

16. All loan documents prepared by Vanderbilt and signed by Plaintiff on or about October 18, 2022, identified the manufactured home as Model 35MYO16763AH22, Serial Number CBH036032TX—the same home specified in the Sales Agreement. True and accurate copies of the loan documents are attached hereto as Exhibit 2 and incorporated herein by reference.

17. The loan was in the original principal amount of approximately $94,794.84, with an interest rate of 9.10% APR, to be repaid through monthly installments of $968.85, which included principal, interest, and escrow payments for taxes and insurance.

4

18. Defendants CMH Homes and Vanderbilt Mortgage operated in a coordinated fashion as affiliated companies to complete the sale and financing transaction, with each entity profiting from the transaction.

19. Defendant Vanderbilt is the captive finance company for CMH Homes, and the entities share a financial interest in maximizing revenue from manufactured home sales and financing.

20. Despite representations that the home would be delivered within approximately two weeks, Defendant CMH Homes delayed delivery for more than two months.

21. During this extended delay from mid-October 2022 through late December 2022, Plaintiff was forced to secure temporary housing accommodations, including staying in an Airbnb rental, hotel rooms, and with family members.

22. Plaintiff incurred substantial out-of-pocket expenses for temporary housing, storage of his belongings, and related costs during the delay period, totaling approximately $1,972.22.

23. The extended delay also caused Plaintiff significant emotional distress and strain on his personal relationships, as he was forced to live in unstable and stressful conditions while awaiting delivery of his home.

24. Additionally, after concrete footers were placed for the home, Plaintiff was informed that he would need to pay an additional $13,100.00 for septic system installation due to soil percolation issues and the need to run the system uphill. This information should have been disclosed to Plaintiff prior to footer placement but was not, resulting in unexpected substantial additional costs.

5

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

25. On or about December 27, 2022, a manufactured home was finally delivered to 615 Pete Clark Lane, Pineville, Missouri 64856, where Plaintiff had arranged for placement on land he was leasing.

26. The home was not fully ready for occupancy until on or about January 7, 2023, when Plaintiff was finally able to move in.

27. At the time of delivery and move-in, Plaintiff had no reason to suspect that the delivered home was not the home he had contracted to purchase, as identified in the Sales Agreement and loan documents as Model 35MYO16763AH22, Serial Number CBH036032TX.

28. In truth and in fact, the manufactured home delivered to Plaintiff was not the home identified in the Sales Agreement and loan documents.

29. The home actually delivered to Plaintiff was Model 35MYO16763AH23, Serial Number CBH037050TX—a different home than the one Plaintiff contracted to purchase.

30. Defendant CMH Homes delivered the wrong home to Plaintiff without his knowledge or consent and made no disclosure that a different home was being substituted for the contracted home.

31. On information and belief, at or around the time Plaintiff signed the Sales Agreement on October 18, 2022, or shortly thereafter, Defendants sold the contracted home (Model 35MYO16763AH22, Serial Number CBH036032TX) to another buyer rather than to Plaintiff.

32. On or about November 3, 2022—just sixteen (16) days after Plaintiff signed his Sales Agreement—Defendants sold and delivered the home Plaintiff had contracted to purchase (Model 35MYO16763AH22, Serial Number CBH036032TX) to another buyer for cash.

6

33. The home contracted for by Plaintiff was delivered to the other buyer at or near 12847 Oak Road, Lot 30, Neosho, Missouri.

34. Defendants never informed Plaintiff that his contracted home had been sold to another buyer.

35. Defendants never sought Plaintiff's consent to substitute a different home for the contracted home.

36. Defendants never offered Plaintiff a choice of accepting the substitute home or canceling the transaction.

37. To conceal the substitution of a different home, Defendants created and maintained fraudulent documentation throughout the transaction.

38. All of Plaintiff's loan documents—including the promissory note, security agreement, and related financing documents—identified the manufactured home as Model 35MYO16763AH22, Serial Number CBH036032TX (the contracted home that was sold to the other buyer), not the home actually delivered to Plaintiff.

39. Plaintiff was thus paying a mortgage on a home he never received, while living in a different home that was not properly documented in the loan records.

40. On information and belief, on or about January 6, 2023—shortly after Plaintiff took possession of the delivered home—Defendant Vanderbilt prepared an "amended letter" or correction document that changed the model and serial number in its records to reflect the home actually delivered (Model 35MYO16763AH23, Serial Number CBH037050TX).

41. Defendant Vanderbilt alleges that this amended letter was mailed to Plaintiff on January 6, 2023. However, Vanderbilt claims the letter was sent to 933 Pete Clark Lane, Pineville, Missouri—an address where Plaintiff has never resided and had no connection to.

7

42. At all times relevant, Plaintiff's address of record with Defendants was 15433 Brightwater Crossing, Rogers, Arkansas 72756, which was the address listed on his loan application and the address to which Vanderbilt sent all mortgage statements.

43. On information and belief, Defendant Vanderbilt intentionally sent the alleged amended letter to an incorrect address to ensure Plaintiff would not receive notice of the correction and would remain unaware that he had received a different home than contracted.

44. Plaintiff never received any notice from any Defendant that the home delivered to him was different from the home identified in the Sales Agreement and loan documents.

45. Plaintiff never received any notice from any Defendant that his contracted home had been sold to another buyer.

46. Defendants' conduct in maintaining fraudulent documentation while concealing the true facts from Plaintiff was intentional and designed to prevent Plaintiff from discovering the substitution and fraud.

47. In August 2024, Plaintiff was required to relocate the manufactured home from the property at 615 Pete Clark Lane due to the landowner's request.

48. In October 2024, Plaintiff and his parents purchased 3.27 acres of land in Seligman, Missouri, to which Plaintiff planned to move the manufactured home.

49. In November 2024, Plaintiff contacted Clayton Homes Corporate headquarters in Tennessee to coordinate the logistics of moving the manufactured home and to obtain necessary documentation for the move.

50. During this November 2024 call with a Clayton Corporate representative identified as "Gabriel," Plaintiff learned for the first time that the corporate records showed a different model and serial number than what appeared on his Sales Agreement and loan documents.

8

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

51.     Specifically, Plaintiff learned that Clayton's corporate records identified his home as Model 35MYO16763AH23, Serial Number CBH037050TX—not the Model 35MYO16763AH22, Serial Number CBH036032TX identified in all of his purchase and loan documents.

52.     Plaintiff physically verified the serial and model numbers on the HUD label affixed under the kitchen sink of the delivered home and confirmed that the delivered home was indeed Model 35MYO16763AH23, Serial Number CBH037050TX.

53.     Plaintiff further learned from Clayton Corporate that their records showed the purchase price for his home as $86,516.00—approximately $9,049.44 less than the $95,565.84 purchase price stated in Plaintiff's Sales Agreement and Bill of Sale from Clayton Homes #689.

54.     Most shocking, Plaintiff learned from Clayton Corporate that the home he had actually contracted to purchase (Model 35MYO16763AH22, Serial Number CBH036032TX) had been sold to another buyer for cash on November 3, 2022, and delivered to the other buyer in Neosho, Missouri.

55.     On November 12, 2024, Plaintiff's mother, Susan Nettle, acting on Plaintiff's behalf, contacted Rusty Enlow, the owner of Clayton Homes #689, to demand an explanation for the substitution of a different home.

56.     Mr. Enlow's response was both revealing and damning: "Well, that's normal. This happens all the time."

57.     When Mrs. Nettle challenged Mr. Enlow by asking whether it was "normal" for the VIN on a vehicle to be incorrect on the title, loan documents, and bill of sale, and informed him that Gabriel from Clayton Corporate had confirmed the sale of the contracted home to the other

9

buyer, Mr. Enlow initially claimed he had no idea who the other buyer was or where that home had gone.

58.    However, moments later in the same conversation, when Mrs. Nettle confronted Mr. Enlow about the nearly $10,000 price discrepancy between the corporate records ($86,516) and the amount Plaintiff was charged ($95,565.84), Mr. Enlow contradicted his earlier claim of ignorance and stated: "that's because the house Carson (Plaintiff) walked through was delivered to a mobile home park and didn't need a septic."

59.    Mr. Enlow's statement that "this happens all the time" constitutes an admission that Defendant CMH Homes d/b/a Clayton Homes #689 engages in a pattern and practice of substituting different manufactured homes for the homes consumers contract to purchase, without disclosure or consent.

60.    Mr. Enlow's contradictory statements—first claiming ignorance about the other buyer and the contracted home's whereabouts, then immediately demonstrating knowledge of where that home was delivered and why it was priced differently—constitute evidence of intentional concealment and fraud.

61.    The fraud perpetrated by Defendants did not end with the delivery of the wrong home. Defendant Vanderbilt has systematically mismanaged Plaintiff's mortgage and escrow account, causing substantial additional financial harm.

62.    Analysis of Plaintiff's loan amortization schedule reveals that Defendant Vanderbilt has been overcharging Plaintiff approximately $134 per month when compared to the correct calculation at the stated APR.

63.    As a result of these overcharges, Plaintiff has paid more than $4,777.50 in excess mortgage payments to Defendant Vanderbilt over the course of the loan.

10

64.     Despite Plaintiff making regular monthly payments totaling $29,834.71 through October 2025, Defendant Vanderbilt's loan statements showed a balance of $95,806.64—a balance exceeding the original purchase price.

65.     As of October 2025, more than three years after the original purchase, the loan balance shown on Defendant Vanderbilt's statements remains at $95,806.64, demonstrating that Plaintiff's payments are not being properly applied to reduce the principal balance.

66.     Defendant Vanderbilt was responsible for paying Plaintiff's McDonald County personal property taxes from the escrow account established as part of the mortgage.

67.     In November 2024, when Plaintiff's mother contacted the McDonald County Assessor's office, she learned that there was no record of property taxes having been paid for Carson Nettle's manufactured home and that no record existed of his home or property address in the county's system.

68.     Only after an employee at the McDonald County Assessor's office directly contacted Defendant Vanderbilt did Vanderbilt immediately pay Plaintiff's 2023 and 2024 property taxes.

69.     Despite Vanderbilt's belated payment, the tax records were marked as "delinquent," potentially damaging Plaintiff's credit and exposing him to penalties and interest charges. True and accurate copies of the property tax statements showing delinquent status are attached hereto as Exhibit 3 and incorporated herein by reference.

70.     Analysis of Plaintiff's escrow account in April 2025 revealed mismanagement and discrepancies in shortage and surplus reporting, with balance adjustments that have never been adequately explained to Plaintiff.

11

71. On information and belief, Defendant Vanderbilt's mismanagement of the mortgage and escrow accounts was intentional and designed to extract additional revenue from Plaintiff through excess charges while concealing the underlying fraud regarding the home's identity.

72. Plaintiff has learned that he is not the only consumer victimized by Defendants' fraudulent scheme.

73. Plaintiff's coworker purchased a manufactured home from Clayton Homes in Lowell, Arkansas, at approximately the same time as Plaintiff's purchase. This coworker experienced a similar situation where the serial and model number on her initial documentation did not match the home being financed. In the coworker's case, Vanderbilt corrected the serial and model numbers before she signed the loan paperwork—demonstrating that Vanderbilt was aware of the practice of substituting homes and sometimes disclosed it, but in Plaintiff's case chose to conceal it.

74. Plaintiff's neighbor purchased a manufactured home from Clayton Homes #689 and is currently experiencing significant problems with the home and receiving the "runaround" from Defendant, who told the neighbor that he was too busy dealing with Plaintiff's issues to address the neighbor's concerns.

75. On information and belief, Defendants have engaged in a systematic pattern and practice of contracting to sell specific manufactured homes to consumers, then substituting different homes without disclosure, while maintaining fraudulent documentation to conceal the substitutions.

76. On information and belief, this pattern and practice is designed to allow Defendants to maximize profits by selling higher-value homes to cash buyers while delivering lower-value substitute homes to financed buyers who are less likely to discover the substitution.

12

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

77. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered substantial damages, including but not limited to:

    a. Difference in value between the contracted home and the delivered home: $9,049.44;

    b. Temporary housing costs during the delayed delivery period: $1,972.22;

    c. Mortgage overpayments due to incorrect amortization: $4,777.50;

    d. Unexpected septic system costs: $13,100.00;

    f. Attorney's fees: amount to be determined;

    g. Property tax penalties and potential credit damage: amount to be determined;

    h. Escrow account losses: amount to be determined;

    i. Diminution in value of the manufactured home: amount to be determined.

78. In addition to economic damages, Plaintiff has suffered garden variety emotional distress as a direct result of Defendants' conduct.

79. The discovery that he had been defrauded and was living in a home he had not contracted to purchase, while paying a mortgage on a different home, caused Plaintiff anxiety, depression, frustration, aggravation, embarrassment, and stress.

80. The ongoing stress of dealing with Defendants' fraud and the financial uncertainty has negatively impacted Plaintiff's personal relationships, including contributing to the end of a significant romantic relationship.

81. Plaintiff's total ascertainable economic damages, including garden variety emotional distress, exceed $25,000.00.

82. Plaintiff continues to incur damages as a result of Defendants' ongoing conduct, including continued excess mortgage payments and the costs of addressing the fraudulent documentation.

13

## COUNT I
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
(Against All Defendants)

83.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84.     The Missouri Merchandising Practices Act ("MMPA"), codified at Mo. Rev. Stat. § 407.010 *et seq.*, prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1.

85.     At all times relevant to this Complaint, Defendants were engaged in "trade" or "commerce" as defined by the MMPA, specifically the sale and financing of manufactured homes to Missouri consumers.

86.     The manufactured home purchased by Plaintiff constitutes "merchandise" within the meaning of the MMPA.

87.     Defendants engaged in numerous deceptive practices, fraudulent acts, misrepresentations, and omissions of material facts in connection with the sale and financing of the manufactured home to Plaintiff, including but not limited to:

    a. Representing that Plaintiff would receive Model 35MYO16763AH22, Serial Number CBH036032TX, when Defendants knew or should have known they would not or could not deliver that specific home;

    b. Delivering a different home (Model 35MYO16763AH23, Serial Number CBH037050TX) without disclosure or consent;

    c. Concealing the fact that the contracted home had been sold to another buyer;

14

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

d. Creating and maintaining fraudulent documentation that misidentified the home being financed;

e. Failing to disclose that the delivered home was different from the contracted home;

f. Intentionally sending corrective documentation to an incorrect address to prevent Plaintiff from discovering the fraud;

g. Overcharging Plaintiff by approximately $9,049.44 compared to the corporate price for the delivered home;

h. Misrepresenting the timing of delivery, causing Plaintiff to incur unnecessary temporary housing expenses;

i. Failing to disclose substantial septic system costs until after footers were placed, when Plaintiff had limited ability to avoid the charges;

j. Overcharging Plaintiff on monthly mortgage payments through incorrect amortization;

k. Mismanaging the escrow account and failing to timely pay property taxes; and

l. Engaging in a pattern and practice of similar conduct with other consumers, as evidenced by Rusty Enlow's admission that "this happens all the time."

88.    Each of the acts described above constitutes a separate violation of the MMPA.

89.    Defendants' conduct was knowing and willful. Defendants knew they were delivering a different home than contracted, knew the contracted home had been sold to another buyer, and deliberately concealed these facts from Plaintiff.

90.    Rusty Enlow's statement that "this happens all the time" demonstrates that Defendants' violations of the MMPA were not isolated errors but rather part of a systematic pattern and practice of deceptive conduct.

15

91. Plaintiff relied on Defendants' representations and omissions and acted as a reasonable consumer would in entering into the Sales Agreement and loan documents.

92. As a direct and proximate result of Defendants' violations of the MMPA, Plaintiff has suffered ascertainable losses exceeding $25,000.00.

93. Pursuant to Mo. Rev. Stat. § 407.025, Plaintiff is entitled to recover:

a. Actual damages in an amount to be determined at trial, but not less than $25,000.00;

b. Punitive damages; and

c. Reasonable attorney's fees and costs.

94. Defendants' conduct was willful, knowing, and part of a pattern and practice, justifying an award of the maximum punitive damages available under the MMPA.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants on Count I, awarding Plaintiff actual damages, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT II
### BREACH OF CONTRACT
(Against Defendant CMH Homes, Inc. d/b/a Clayton Homes #689)

95. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

96. On October 18, 2022, Plaintiff entered into a binding written Sales Agreement with Defendant CMH Homes, Inc. d/b/a Clayton Homes #689 for the purchase of a manufactured home specifically identified as Model 35MYO16763AH22, Serial Number CBH036032TX, for a total purchase price of $95,565.84.

97. The Sales Agreement constituted a valid and enforceable contract between Plaintiff and Defendant CMH Homes, Inc.

16

98. Under the terms of the Sales Agreement, Defendant CMH Homes, Inc. agreed to deliver to Plaintiff the manufactured home specifically identified in the contract: Model 35MYO16763AH22, Serial Number CBH036032TX.

99. Plaintiff performed all conditions precedent to Defendant's obligations under the Sales Agreement, including making the required down payment, obtaining financing, and preparing the site for delivery.

100. Defendant breached the Sales Agreement by:

a. Failing to deliver the contracted home (Model 35MYO16763AH22, Serial Number CBH036032TX);

b. Delivering a non-conforming substitute home (Model 35MYO16763AH23, Serial Number CBH037050TX) without Plaintiff's consent;

c. Selling the contracted home to another buyer in violation of its contractual obligations to Plaintiff; and

d. Failing to deliver the home within a reasonable time as represented.

101. Defendant's breaches were material and went to the essence of the contract, as the identity of the specific manufactured home was a fundamental term of the agreement.

102. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages including:

a. The difference in value between the contracted home and the delivered home: $9,049.44;

b. Consequential damages in the form of temporary housing costs during the delayed delivery: $1,972.22;

c. Additional septic costs not properly disclosed: $13,100.00; and

17

d. Other damages to be proven at trial.

103.     Plaintiff's damages as a result of Defendant's breach of contract exceed $25,000.00.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant CMH Homes, Inc. d/b/a Clayton Homes #689 on Count II, awarding Plaintiff compensatory damages, consequential damages, costs, and such other and further relief as the Court deems just and proper.

**COUNT III**
**FRAUD AND FRAUDULENT MISREPRESENTATION**
(Against All Defendants)

104.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

105.     Defendants made material representations to Plaintiff, including:

a. That the manufactured home identified in the Sales Agreement as Model 35MYO16763AH22, Serial Number CBH036032TX, would be the home delivered to Plaintiff;

b. That the manufactured home identified in the loan documents as Model 35MYO16763AH22, Serial Number CBH036032TX, was the home being financed and would be the home delivered to Plaintiff;

c. That all documentation accurately reflected the home being sold and financed;

d. That the purchase price of $95,565.84 was the proper price for the home being delivered; and

e. That the home would be delivered in approximately two weeks.

106.     Each of these representations was false.

18

107. The representations were material to Plaintiff's decision to enter into the Sales Agreement and loan documents.

108. At the time Defendants made these representations, Defendants knew they were false or made them recklessly without regard for their truth.

109. Specifically:

    a. Defendants knew or should have known that the contracted home (Model 35MYO16763AH22, Serial Number CBH036032TX) would not be delivered to Plaintiff because it was allocated for sale to another buyer;

    b. Defendants knew the home actually being delivered (Model 35MYO16763AH23, Serial Number CBH037050TX) was different from the contracted home;

    c. Defendants knew the contracted home was sold to another buyer on November 3, 2022;

    d. Defendants knew the corporate price for the delivered home was approximately $10,000 less than what Plaintiff was being charged;

    e. Defendants knew they were creating fraudulent loan documentation that misidentified the home; and

    f. Defendants knew that sending the alleged corrective documentation to an incorrect address would prevent Plaintiff from learning of the substitution.

110. Defendants intended that Plaintiff rely on these false representations in completing the purchase and financing of the manufactured home.

111. Plaintiff did not know the representations were false and had no reasonable means of discovering the falsity at the time he entered into the Sales Agreement and loan documents.

19

112.   Plaintiff reasonably relied on Defendants' representations in entering into the transaction.

113.   As a direct and proximate result of Plaintiff's reliance on Defendants' fraudulent representations, Plaintiff suffered substantial damages exceeding $25,000.00, as detailed above.

114.   Defendants' conduct was intentional, willful, and malicious, demonstrating a complete disregard for Plaintiff's rights and justifying an award of punitive damages.

115.   Defendants' fraudulent conduct was part of a systematic pattern and practice, as evidenced by Rusty Enlow's admission that "this happens all the time" and by similar conduct with other consumers.

116.   Defendants' pattern and practice of fraud demonstrates a corporate culture that condones and encourages deceptive conduct, warranting substantial punitive damages to deter future similar conduct.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants on Count III, awarding Plaintiff compensatory damages, costs, and such other and further relief as the Court deems just and proper.

## COUNT IV
### FRAUDULENT CONCEALMENT
(Against All Defendants)

117.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

118.   Defendants had a duty to disclose to Plaintiff material facts regarding the manufactured home transaction, including:

    a. That the contracted home would not be delivered to Plaintiff;

    b. That the contracted home had been sold to another buyer;

20

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

c. That a different home was being substituted without Plaintiff's consent;

d. That the loan documents contained incorrect information about the home being financed;

e. That corrections were being made to title documents; and

f. That the delivered home had a lower value than the price Plaintiff was being charged.

119. Defendants had a duty to disclose these facts because:

a. Defendants had superior knowledge of facts not readily available to Plaintiff;

b. Defendants created the misleading documentation that concealed the true facts;

c. Missouri law requires disclosure of material facts in consumer transactions; and

d. The relationship between the parties, involving the sale and financing of a home, created a duty of fair dealing and disclosure.

120. Defendants intentionally concealed these material facts from Plaintiff with the intent to defraud Plaintiff and induce him to complete the purchase.

121. Specifically, Defendants:

a. Maintained fraudulent documentation that misidentified the home;

b. Failed to disclose that a substitution had occurred;

c. Failed to disclose that the contracted home had been sold to another buyer;

d. Allegedly sent corrective documentation to an incorrect address to ensure Plaintiff would not receive it;

e. Never informed Plaintiff of any discrepancies or corrections; and

f. Actively prevented Plaintiff from discovering the fraud for more than two years.

21

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

122.     Defendants' concealment was intentional and designed to prevent Plaintiff from discovering the substitution and fraud until after he had made substantial payments and commitments.

123.     Plaintiff justifiably relied on Defendants' duty to disclose material facts and had no reasonable means of discovering the concealed facts through his own investigation.

124.     As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered damages exceeding $25,000.00.

125.     Defendants' fraudulent concealment was willful, wanton, and malicious, justifying an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants on Count IV, awarding Plaintiff compensatory damages, costs, and such other and further relief as the Court deems just and proper.

<u>**COUNT V**</u>
**NEGLIGENCE**
(Against Defendant Vanderbilt Mortgage and Finance, Inc.)

126.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

127.     Defendant Vanderbilt Mortgage and Finance, Inc. owed Plaintiff a duty of reasonable care in servicing Plaintiff's mortgage loan and escrow account.

128.     This duty included, among other things:

   a. A duty to accurately calculate and apply mortgage payments;

   b. A duty to properly manage the escrow account;

   c. A duty to timely pay property taxes from the escrow account;

   d. A duty to maintain accurate records regarding the home securing the mortgage;

22

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

e. A duty to properly communicate with Plaintiff regarding his loan; and

f. A duty to send important documents to Plaintiff's correct address.

129. Defendant Vanderbilt breached its duty of care in numerous ways, including:

a. Failing to accurately calculate monthly mortgage payments, resulting in overcharges of approximately $134 per month;

b. Mismanaging the escrow account and failing to properly account for funds;

c. Failing to timely pay Plaintiff's 2023 and 2024 property taxes, resulting in delinquent status;

d. Failing to maintain accurate records, as evidenced by the discrepancy between loan documents and the actual home;

e. Allegedly sending an important amendment to an incorrect address;

f. Failing to respond to Plaintiff's requests for information and documentation; and

g. Allowing the loan balance to exceed the purchase price despite regular payments being made.

130. Defendant Vanderbilt's conduct fell below the standard of care expected of a reasonable mortgage servicer.

131. As a direct and proximate result of Defendant Vanderbilt's negligence, Plaintiff has suffered damages including:

a. Excess mortgage payments of greater than $4,777.50;

b. Property tax penalties and potential credit damage from delinquent tax status;

c. Escrow account losses and discrepancies;

d. Emotional distress from dealing with Vanderbilt's mismanagement; and

e. Other damages to be proven at trial.

23

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Vanderbilt Mortgage and Finance, Inc. on Count V, awarding Plaintiff compensatory damages, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI
## UNJUST ENRICHMENT
(Against All Defendants)

132.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

133.     Defendants have been unjustly enriched at Plaintiff's expense through:

a. Charging Plaintiff $95,565.84 for a home that had a corporate price of only $86,516.00, resulting in excess charges of $9,049.44;

b. Collecting excess mortgage payments of greater than $4,777.50 due to incorrect amortization;

c. Receiving payment for a home that was not delivered (the contracted home), while delivering a different, lower-value home;

d. Profiting from the coordinated sale and financing scheme between affiliated companies; and

e. Retaining all of Plaintiff's payments despite breaching their contractual obligations and engaging in fraud.

134.     Defendants have retained these benefits without legal justification.

135.     It would be unjust and inequitable for Defendants to retain these benefits.

136.     Equity and good conscience require that Defendants return these unjust gains to Plaintiff.

24

137. Plaintiff has no adequate remedy at law for the unjust enrichment, or alternatively, this claim is pled in the alternative to Plaintiff's other claims.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants on Count VI, awarding Plaintiff restitution of all amounts unjustly retained by Defendants, costs, and such other and further relief as the Court deems just and proper.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**
(Against All Defendants)

138. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

139. In the course of the sale and financing transaction, Defendants made representations to Plaintiff regarding the manufactured home being sold and financed, the pricing, the delivery timeline, and other material terms of the transaction.

140. These representations were false, as detailed above.

141. Defendants made these representations without reasonable grounds for believing them to be true or without taking reasonable steps to verify their accuracy.

142. Defendants made these representations in the course of their business of selling and financing manufactured homes.

143. Defendants knew or should have known that Plaintiff would rely on these representations in making the decision to purchase and finance the manufactured home.

144. The representations were material to Plaintiff's decision-making.

145. Plaintiff justifiably relied on Defendants' representations.

25

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

146. As a direct and proximate result of Plaintiff's reliance on Defendants' negligent misrepresentations, Plaintiff has suffered damages exceeding $25,000.00.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants on Count VII, awarding Plaintiff compensatory damages, costs, and such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Carson Thomas Nettle respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against all Defendants on all counts;

2. Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $25,000.00;

3. Award Plaintiff damages as authorized under the Missouri Merchandising Practices Act;

4. Award Plaintiff reasonable attorney's fees and costs as authorized by statute and applicable law;

5. Award Plaintiff pre-judgment and post-judgment interest at the maximum legal rate;

6. Grant Plaintiff such injunctive relief as may be appropriate to prevent Defendants from engaging in similar conduct with other consumers;

7. Grant Plaintiff leave to amend this Complaint to add additional claims or parties as discovery reveals;

8. Award Plaintiff costs of suit; and

9. Grant such other and further relief as this Court deems just, proper, and equitable.

26

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DONNER APPLEWHITE**
ATTORNEYS AT LAW

By: */s/ Christian T. Misner*
       Christian T. Misner
       Attorney at Law, #65572
       5205 Hampton Avenue
       St. Louis, MO 63109
       Phone: (314) 240-5351
       Facsimile: (888) 785-4461
       Email: christian.misner@da-lawfirm.com

*Attorney for Plaintiff Carson Thomas Nettle*

27

DocuSign Envelope ID: F68C6F90-2FCD-4595-A68D-EE846CC056CC

1491390



**SALES AGREEMENT**



Home Consultant Name:
BRADLEY CRUM

Buyer(s): CARSON THOMAS NETTLE

Phone #:

Address: ██████████████████████
Delivery Address: █████████████████████

| Home Info | | Pricing | |
|---|---|---|---|
| Make: | CMH | Home Price | $92,291.40 |
| Model: | 35MYO16763AH22 | State Tax | $2,339.59 |
| Serial #: | CBH036032TX | Local Tax | $899.85 |
| Stock #: | BO6032 | | |
| [x] New [ ] Used | | Cash Price | $95,530.84 |
| Trade Info | | | |
| Make: | N/A | TITLE FEES | $35.00 |
| Model: | N/A | | |
| Serial #: | | | |
| Year: | N/A | | |
| Size: Length: N/A Width: N/A | | | |
| Title #: | | Total Package Price | $95,565.84 |
| Owed to: | | Trade Allowance | N/A |
| | | Less Amount Owed | N/A |
| Amount owed will be paid by: [ ] Buyer [ ] Seller | | Trade Equity | N/A |
| | | Cash Down Payment | $2,015.00 |
| | | Less All Credits | $2,015.00 |
| | | Remaining Balance | $93,550.84 |

**Responsibilities**

Seller Responsibilities: Deliver, Set, Tie Down, Pour Footers, Install AC, Install Metal Skirting, Install Standard Septic, Install Electric From the ole to the Home, Steps for the Front and Back Doors

Buyer Responsibilities: Electric Pole and 200AMP Meter Loop within 50Feet of the home, Water to the Home. All Permits Needed for the Home, Access to the Property

Options:

**Acknowledgment**

*New Manufactured Homes meet federal standards for design and construction, but may not meet local codes and standards.*
Buyer(s) agree: (1) that the terms and conditions on pages two and three are part of this agreement; (2) to purchase the above home including the options; (3) that they acknowledge receiving a completed copy of this agreement; (4) that all promises and representations made are listed on this agreement; and (5) that there are no other agreements, written or verbal, unless evidenced in writing and signed by the parties.

*Carson Thomas Nettle*
Signature of Buyer: CARSON THOMAS NETTLE          10/18/2022  Date

Signature of Buyer:          Date

Signature of Buyer:          Date          Signature of Buyer:          Date

*RICHARD EMON*
Seller: CLAYTON HOMES NEOSHO, MO          10/18/2022  Date

Case 3:26-cv-05017-MDH    Document 1-1    Filed 03/06/26    Page 35 of 63

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

# ADDITIONAL TERMS AND CONDITIONS

1. **APPLICABILITY.** The terms and conditions stated herein are in addition to any terms of the sale of the home by Seller to Buyer (which may include a manufactured home or a modular home) stated on the front of the agreement.

2. **SELLER & BUYER RESPONSIBILITIES. Delivery and installation:** If delivery and installation are included in the purchase price, Buyer agrees: (1) delivery is generally scheduled in order of sale; (2) the **exact date** for occupancy cannot be guaranteed because of weather, site conditions, equipment and labor availability, and other variables involved; (3) the decision to purchase the home is not based upon any representations as to the anticipated **date of occupancy**. Buyer acknowledges that they have been advised to review any restrictive covenants and/or homeowner's association rules and regulations that are applicable to the specific property that they are considering, and agree to abide by the same, and Buyer further agrees that they have not relied upon the advice, interpretations, or representations, if any, by Seller's representatives with respect to such documents. Buyer acknowledges and agrees that the total purchase price does not include costs associated with unknown environmental issues with the land or unanticipated site improvements required by any state, county or local jurisdiction having authority, and Buyer shall be responsible for all such additional costs.

3. **DEPOSIT.** The Buyer may have paid a cash deposit to Seller. If Buyer fails or refuses to complete the home purchase or otherwise perform under this Sales Agreement, or unreasonably delays or impedes Seller's performance, or otherwise breaches this Sales Agreement, Seller may cancel this Sales Agreement and, to the extent permitted by applicable law, elect to keep some or all of any cash deposit paid by Buyer to offset any expenses, other damages, attorney fees, court costs, and any construction costs incurred by Seller in connection with the sale contemplated in this Sales Agreement. Seller's election to retain some or all of a cash deposit shall not preclude Seller from electing to pursue any other remedies available to Seller under applicable law. Unless agreed to otherwise in writing between Buyer and Seller, for non-financed cash purchases, the following draw schedule shall apply: ten percent (10%) deposit will be due up front and/or at time of ordering, additional eighty percent (80%) due at time the home is delivered to the Seller's home center, and remaining ten percent (10%) prior to transfer of keys and/or ownership to Buyer.

4. **FINANCED PURCHASE.** If Buyer does not complete the purchase as a cash transaction, Buyer will enter into a loan or other financing arrangement with a lender selected by Buyer or other agreement as may be required to finance the purchase.

5. **CHANGES BY MANUFACTURER.** Buyer agrees that the manufacturer of the home may make any changes in the model, designs, or any accessories and parts from time to time, and at any time. If the manufacturer makes changes, neither Seller nor the manufacturer are obligated to make the same changes in the home covered by this Sales Agreement either before or after it is delivered.

6. **CHANGE ORDERS.** Any changes, additions or modifications to the home, features of the home, upgrades, options, site improvements and any other aspect of this agreement shall be set forth in a written change order or a revised Sales Agreement and must be signed by the parties. Seller reserves the right to approve or disapprove, at Seller's sole discretion, any changes, additions or modifications. Buyer acknowledges and agrees that any such changes, additions or modifications may increase the purchase price and result in delays.

7. **LIMITATION OF DAMAGES.** To the extent permitted by applicable law, Buyer agrees that, if they are entitled to any damages against the Seller, the damages are limited to the lesser of either the cost of needed repairs or reduction in the market value of the home caused by the lack of repairs. Where permitted by applicable law, Seller will not be liable to the Buyer for any incidental or consequential damages. Buyer also agrees that, once the home has been accepted, the Buyer cannot return the home to the Seller and seek a refund for any reason.

8. **WARRANTIES BY THE MANUFACTURER.** Seller is not the manufacturer of the home. **For new homes, the homeowner's manual and/or other warranty documents from the manufacturer are provided with the home and set forth the manufacturer's home warranty.** In general, the manufacturer warrants that the home's design and construction complies with applicable law in effect at the date of manufacture. There may be other warranties covering the home, items sold with the home or its contents, which have been provided by the manufacturer of the home. Seller will provide Buyer copies of any and all written warranties provided by the manufacturer to the extent made available to Seller by the manufacturer. **ALL IMPLIED WARRANTIES, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, ARE DISCLAIMED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW.**

9. **MEASUREMENTS.** Buyer acknowledges that all measurements of dimensions (including home square footage), construction thickness, and insulation values are nominal. Seller has not performed the measurements and does not warrant the accuracy of any measurement.

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

10. **ENTRY INTO PROPERTY.** Buyer acknowledges and agrees that any entry onto property or into the home at any time prior to closing and full funding by Buyer or Buyer's agents, representatives, or invitees is at the sole risk of Buyer and Buyer does hereby waive and release Seller or its agents from and against any and all claims for damages to person or property occurring as a result of any entry onto the property or into the home prior to closing and full funding. Buyer further covenants and agrees with Seller that any entry onto the property or into the home by Buyer or any of Buyer's agents, representatives, or invitees shall occur only on days or at times which are approved or specified by Seller and shall not, in any event, interfere with the construction of the dwelling. The provisions of this Paragraph shall survive the termination of this Agreement and the Closing.

11. **SUPERVISION OF WORK.** Buyer agrees that the direction and supervision of contractors and/or subcontractors installing and/or constructing the home or improvements to the property that are part of Seller's Responsibilities as set forth on the front page, rests exclusively with the Seller, and Buyer agrees not to issue any instructions to, or otherwise interfere with the same. Buyer shall not, under any circumstances, order any work performed to the home or the property by a subcontractor or direct any changes to work to the home or the property without the explicit approval of the Seller. To the fullest extent permitted by law, Buyer undertakes full authority and responsibility to supervise and direct all work related to anything listed under "Buyer's Responsibilities" on the front page, and agrees that Seller shall not be liable in any way for any loss or damage arising from such work.

12. **ORAL REPRESENTATIONS.** Seller hereby disclaims to the fullest extent permissible by law any oral representations concerning the quality or character of the home or its contents. All representations concerning the quality and character of the home are stated in this Sales Agreement, including any addenda, and the Retailer Closing Agreement.

13. **COMPLETE AGREEMENT.** This Sales Agreement, including any addenda, the Retailer Closing Agreement, and any arbitration/dispute resolution agreement establish the complete agreement between Buyer and Seller and there are no other agreements, unless evidenced in writing and signed by the parties.

14. **RULES OF CONSTRUCTION.** If any provision of this Sales Agreement is held to be void, illegal or unenforceable, then that provision shall be severed from the remainder of this Sales Agreement, which shall remain enforceable. The parties waive application of the rule of construction that requires a tribunal to construe this Sales Agreement against the drafter.



Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

## ELECTRONIC RECORD AND SIGNATURE AGREEMENT

Please read this information carefully and print a copy and/or retain this information for future reference.

You are submitting a request to apply for credit to third party lenders and/or service providers. In order to process your loan application request electronically, the third party lenders and/or service providers need your consent to use and accept electronic signatures, records, and disclosures ("E-Consent"). This form notifies you of your rights when receiving electronic disclosures, notices, and information. By clicking to accept our terms, you acknowledge that you received this E-Consent and that you consent to receiving electronic disclosures, electronic records, and electronic contract documents ("Transaction Documents") and to the use of electronic signatures. "Electronic Signatures" means symbols or other data in digital form that are attached to an electronically transmitted document as verification of the party's intent to sign the document or acknowledge having received the document.

### OPTION FOR PAPER OR NON-ELECTRONIC RECORDS

You may request any Transaction Document in paper copy by contacting CMH Homes, Inc., (referred to as "CMH"), the third party lender and/or the service provider directly. CMH, the lenders and/or the service providers will provide paper copies at no charge and will retain all Transaction Documents as applicable law requires. To obtain a paper copy from CMH, please call us at 855-579-5145 with your request. In order to obtain a paper copy from a third party lender and/or service provider, please contact the third party lender(s) and/or service provider(s) directly.

### SCOPE OF CONSENT

This E-Consent applies to all interactions online concerning you, CMH, and the third party lender(s) and/or the service provider(s) and includes those interactions engaged in on any personal computer, laptop or mobile device, including phones, smart-phones, and tablets. By exercising this E-Consent, CMH, and the third party lender(s) and/or the service provider(s) may process your information and interact during all online interactions with you electronically. CMH, and the third party lender(s) and/or the service provider(s) may also send you notices electronically related to its interactions and transactions. Disclosures may be provided online at CMH or third party lenders' and/or service providers' websites, and may be provided by e-mail.

### SYSTEM REQUIREMENTS

Before you decide to do business electronically with CMH , the third party lenders and/or the service providers, you should consider whether you have the required hardware and software capabilities described below. To successfully transact business with us electronically, you must have access to:

- A computer capable of accessing the Internet and sending and receiving e-mail,
- An active email address,
- A printer if you wish to print out and retain records on paper, and electronic storage if you wish to retain records in electronic form,
- Microsoft Windows 7 or later versions, iOS 9 or later, Android 5 or later, or Apple Mac OS X Leopard (10.5) or later versions, and
- An Internet browser that supports 128-bit encryption.

Our resources are best experienced with any of the following:

- Microsoft Internet Explorer 11.0 or later versions
- Mozilla Firefox 52 or later versions
- Apple Safari 10 or later versions
- Google Chrome 53 or later versions
- Adobe Reader 9.5 or later versions or Adobe compatible software, so you can view Adobe PDF files. A free copy of a PDF reader is available at the following web address: http://get.adobe.com/reader/

You may send any questions regarding the hardware and software requirements directly to CMH, the third party lenders and/or the service providers.

**WITHDRAWING CONSENT**

Your E-Consent for third party lenders' and/or service providers' consideration of your application request cannot be withdrawn because it is a one-time transaction. If you choose to do business with a third party lender and/or service provider, you are free to withdraw your E-Consent with those third party lenders and/or service providers at any time and at no charge. Contact CMH, the third party lender and/or service provider directly if you wish to withdraw this E-Consent. If you decide to withdraw this E-Consent, the legal effectiveness, validity, and enforceability of electronic Transaction Documents that have already been provided to you and use of Electronic Signatures will not be affected.

**CHANGE TO YOUR CONTACT INFORMATION**

You should keep CMH, third party lenders and/or the service providers informed of any change in your electronic address or mailing address. You may update contact information with CMH at 855-579-5145, or by sending the lender and/or the service provider a written update at the address they provide you.

**YOUR ABILITY TO ACCESS DISCLOSURES**

BY CLICKING TO ACCEPT, YOU AGREE TO THE TERMS OF THIS E-CONSENT AND ACKNOWLEDGE THAT YOU CAN ACCESS THE TRANSACTION DOCUMENTS IN THE DESIGNATED FORMATS DESCRIBED ABOVE.

YOU ACKNOWLEDGE YOU HAVE READ THIS INFORMATION ABOUT ELECTRONIC SIGNATURES, RECORDS, DISCLOSURES, AND DOING BUSINESS ELECTRONICALLY. YOU CONSENT TO USING ELECTRONIC SIGNATURES, HAVING TRANSACTION DOCUMENTS PROVIDED OR MADE AVAILABLE TO YOU IN ELECTRONIC FORM AND TO DOING BUSINESS WITH CMH, THIRD PARTY LENDERS AND/OR SERVICE PROVIDERS ELECTRONICALLY. YOU ACKNOWLEDGE THAT YOU MAY REQUEST A PAPER COPY OF THE ELECTRONIC TRANSACTION DOCUMENTS, WHICH WILL BE PROVIDED TO YOU AT NO CHARGE. IF YOU REFRAIN FROM PROCEEDING THEN YOU NEITHER WISH TO USE ELECTRONIC SIGNATURES NOR CONDUCT THIS TRANSACTION ELECTRONICALLY. YOU ALSO ACKNOWLEDGE THAT YOUR CONSENT TO ELECTRONIC TRANSACTION DOCUMENTS IS REQUIRED TO RECEIVE SERVICES FROM CMH, THIRD PARTY LENDERS AND/OR SERVICE PROVIDERS OVER THE INTERNET.

_Carson Thomas Nettle_

9-23-2022

Applicant Carson Thomas Nettle      Date

Applicant      Date

# eApp Electronic Signature Completion Certificate

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

Home Center:  Clayton Homes #689

Salesperson:  ▆▆▆▆▆▆

Name of Signer 1:  Carson Thomas Nettle

IP address:  ▆▆▆▆▆▆

Email address:  ▆▆▆▆▆▆

Date: 9-23-2022

Timestamp:  2022-09-23 18:36:12:685 EST

Electronic Record and Signature Agreement Accepted:

*Carson Thomas Nettle*

## Home Protection Plan Coverage

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

The Home Protection Plan extends protection for up **to 5 years** on major components of your new home. In summary, the protection plan covers the structure of your home: original systems (such as plumbing, electrical system, water heater, and central heat and air conditioning), as well as appliances included in your home at the time of delivery. ***NOTE - This is a general summary of the product, and not intended as a complete description. See the official product brochure for complete explanation of coverage details, costs, and other terms.***

You have the opportunity to consider the purchase of a Home Protection Plan in connection with the purchase of your new home; note that the Home Protection Plan is not available for used, pre-owned, traded or repossessed/foreclosed homes.

The Home Protection Plan is optional and is not required in order to either purchase a home or obtain credit (a loan). ***Note: Issues relating to your loan, should you decide to finance the purchase of your home, must be addressed by you with the lender you choose; some loan programs may not permit the purchase or financing of the Home Protection Plan.***

As summarized below, the cost of the Home Protection Plan is the same whether you purchase your home with cash or finance its purchase (i.e., borrow money to buy the home).

Home Protection Plan
- 5-year term
- Manufactured and Modular Homes   $799

If you have any questions about the Home Protection Plan while you are shopping for a home, then please request a product brochure.

***After you have chosen your home, if you elect to buy the Home Protection Plan, then you will receive and sign documentation relating to the product <u>at the closing of your home purchase.</u>***

Date:　　　　　9-23-2022

Customer (sign):　*Carson Thomas Nettle*

Print Name:　　Carson Thomas Nettle

Date:　　　　　_____

Customer (sign):　_____

Print Name:　　_____

## *Ask for a free brochure today!*

## Lender Choice Form

Here is a list of lenders that currently offer financing for manufactured and modular home purchases in your general area.

Please consider the information provided by these lenders (if available) and select the lender(s) you would like to apply with by checking the appropriate box(es). If you would like your application sent to a lender that is not on the list, please write the lender's name and contact information in the "Other" spaces provided. If you have been conditionally approved with a lender and do not want to send your application to additional lenders at this time, check the "Conditional Approval" box. If you will not need financing because you will be completing your home purchase transaction entirely in cash, then please check the "Cash Deal" box.

**NOTE: Vanderbilt Mortgage and Finance, Inc., including its DBA, Silverton Mortgage, is an affiliate lender of this home center.**

### HOME ONLY LENDERS

| | Name | Phone | Fax | Web |
|---|---|---|---|---|
| ☐ | Credit Human | (800) 598-9764 | (800) 598-9802 | mhlending.credithuman.com |
| ☐ | Triad Financial | (888) 936-1179 | (888) 936-1290 | www.triadfs.com |
| ☒ | Vanderbilt Mortgage And Finance (affiliate lender of this home center) | (866) 701-0467 | (866) 701-5191 | www.vmf.com |
| ☒ | Other (please specify) Geneva | | | |

### LAND HOME LENDERS

| | Name | Phone | Fax | Web |
|---|---|---|---|---|
| ☐ | eLend | (800) 634-8616 | (973) 883-2570 | www.elend.com |
| ☐ | Leader One | (316) 559-2600 | | |
| ☐ | Vanderbilt Mortgage And Finance;Silverton Mortgage, A Division of Vanderbilt (affiliate lender of this home center) | (866) 701-0467; (980) 202-4093 | (866) 701-5191; (910) 367-5601 | www.vmf.com;jhuffman.silvertonmortgage.com |
| ☐ | Other (please specify) | | | |

### NO APPLICATION NEEDED

| | Name | Phone | Fax | Web |
|---|---|---|---|---|
| ☐ | Conditional Approval (please specify Lender) | | | |
| ☐ | Cash Deal with no Lender | N/A | N/A | N/A |

*By signing below, you are confirming that the retailer or its employees did not steer or otherwise influence your decision to apply with your chosen lender(s). If you choose to apply to an additional lender in the future, you may be asked to complete an additional copy of this form for our records.*

Print Name: Carson Thomas Nettle   Signed: *Carson Thomas Nettle*   Date: 9-23-2022

Print Name: _____   Signed: _____   Date: _____

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

QCD: 2555
HC: 689
For Lender changes, please email LenderChoiceChanges@ClaytonHomes.com

5.2020

Case 3:26-cv-05017-MDH   Document 1-1   Filed 03/06/26   Page 42 of 63

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

NMLS# 1561

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Reference No.:

To Applicant(s):   Carson Thomas Nettle

From:   CMH Homes, Inc. ("CMH"), Wimbledon Properties, LLC ("Wimbledon"), Clayton Properties Group, Inc. ("Clayton Properties"), Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), Silverton Mortgage ("Silverton"), a division of Vanderbilt, as applicable.

Property:   (a) Home Description (If Applicable):

**If the above Description is left blank it means that the Description is unknown at the time of the delivery of this Affiliated Business Arrangement Disclosure Statement.**

(b) Property Address or Address Where Home Located or To Be Located:

**If the above Address is left blank it means that the Address is unknown at the time of the delivery of this Affiliated Business Arrangement Disclosure Statement.**

This is to give you notice that CMH Homes, Inc., ("CMH"), Wimbledon Properties, LLC. ("Wimbledon"), Clayton Properties Group, Inc. ("Clayton Properties"), Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), Silverton Mortgage ("Silverton"), a division of Vanderbilt and HomeFirst Agency, Inc., also doing business as HomeFirst Insurance Agency, Inc. in California, and Silverton Insurance Solutions ("HomeFirst") have business relationships with each other. CMH, Wimbledon, Clayton Properties, Vanderbilt, Silverton and HomeFirst are each indirect, wholly owned subsidiaries of the same parent company. Therefore, each is an affiliate of the other. Because of this relationship, this referral may provide CMH, Wimbledon, Vanderbilt, Silverton and HomeFirst a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are **NOT** required to use the listed provider(s) as a condition for settlement of your loan or purchase of the subject property. **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| Service Provider | Service Provided | Charge or Range of Charges |
|---|---|---|
| Vanderbilt Mortgage | Loan Origination Fee | 0 - 2.75% of the loan amount |
| | Interest Rate | Interest rates will vary by state, loan product and terms |
| | Discount Points | 0 - 2% of the loan amount (optional) |
| Silverton Mortgage | Loan Origination Fee | 0 - 2.75% of the loan amount |
| | Interest Rate | Interest rates will vary by state, loan product and terms |
| | Discount Points | 0 - 2% of the loan amount (optional) |
| HomeFirst | MH and Modular Hazard Insurance | Premium based on home's price or value; whether new or preowned; age of Home; where home is located and coverage terms: $2.00 to $200.00 per $1,000.00 of coverage (not including endorsement premiums, age of home surcharges or catastrophe fees) |
| | Home Buyer Protection Plan (Insurance) or Home Protection Plan (service contract) | Cost determined by which product is offered in a particular state and whether the Home is single (SS) or multi (MS). Product is available for new homes only. SS HBPP $480 MS HBPP $580 SS and MS HPP $799 (HPP is available in all states except AK, CT, FL, MA, NV, OR and TX). |
| | Site built (non MH or Modular) Hazard Insurance | $500 - $10,000 annual premium, will vary depending on coverages and associated risk assessments such as age and location of home, insurance score, past claims of the insured, etc. Does not include endorsement premiums. |

## ACKNOWLEDGEMENT

I/We acknowledge receipt of a copy of this disclosure statement within 3 business days of my/our loan application or prior to or at the time of the referral of the settlement service(s) described above. I/We further acknowledge that I/we have read this disclosure form and that I/we understand that CMH, Wimbledon, Clayton Properties, and/or Vanderbilt/Silverton is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

*Carson Thomas Nettle*

_____
Signature Carson Thomas Nettle

9-23-2022
_____
Date

_____
Signature

_____
Date

Case 3:26-cv-05017-MDH    Document 1-1    Filed 03/06/26    Page 43 of 63          eApp

# OUTSIDE LENDING CHECKLIST

1. Choose Loan Type
2. Submit Deal With Pre-Acceptance Documents (Required on all deals)
3. Proceed to Loan Type Checklist for Deal/Land Closing

| | Pre-Acceptance Documents | Additional Comments |
|---|---|---|
| | Preliminary Sales Agreement/ Sales Worksheet | *Signed by all parties* |
| | ABAD | *Signed and dated by all customers* |
| | The Choice Is Yours | *Signed and dated by all customers* |
| | Spanish Disclosure | *AZ, NM, TX, HC's 268, 269, 297, 675, 858, 889* |
| | Making An Informed Decision | *TX Only* |
| | HBPP/HBP Plan Coverage | *Signed and dated by all customers* |
| | RSO Order Confirmation | *Must have Serial Number* |
| | Government Issued Photo ID/Business ID | *Contact Mortgage Specialist if questions* |
| | **Cash No Lender** | |
| | All Applicable Pre-Acceptance Docs | *See Pre-Acceptance Docs* |
| | **Cash With Lender** | **Home Only with Lender or Outside Construction** |
| | All Applicable Pre-Acceptance Docs | *See Pre-Acceptance Docs* |
| | Loan Commitment Letter/Loan Approval | *Must be from an approved lender* |
| | HUD 1 Settlement (if applicable) | *Final HUD signed by all customers* |
| | Draw Schedule from Lender | *ZVP Approval if not 10-80-10* |
| | **Land Home** | **Includes Land Purchase Or Land Payoff** |
| | All Applicable Pre-Acceptance Docs | *See Pre-Acceptance Docs* |
| | Loan Commitment Letter | *Must be from an approved lender* |
| | Land Sales Contract/Payoff Letter | *Signed by all parties* |
| | Warranty Deed | *For total amount of land purchase price* |
| | Deed of Trust (if land payoff) | *For total amount of sales agreement* |
| | Promissory Note | *For total amount of sales agreement* |
| | Title Insurance Commitment | *Taxes, liens, judgments paid* |
| | Professional Land Survey/Plat Map | *Required on all deals* |
| | Professional Appraisal | *From lender* |
| | Septic Permit, Perk Test, or Utility Sewert | *If applicable* |
| | HUD 1 Settlement Statement | *For land closing* |
| | Wiring Instructions | *Dated within 30 days of land closing* |
| | **Land In Lieu** | |
| | All Applicable Pre-Acceptance Docs | *See Pre-Acceptance Docs* |
| | Loan Commitment Letter | *Must be from an approved lender* |
| | Deed of Trust | *For total amount of Sales Agreement* |
| | Promissory Note | *For total amount of Sales Agreement* |
| | Title Insurance Commitment | *Taxes, liens, judgments paid* |
| | Professional Land Survey/Plat Map | *Required on all deals* |
| | Professional Appraisal | *From lender* |
| | Septic Permit, Perk Test, or Utility Sewer | *If applicable* |
| | HUD 1 Settlement Statement | *For land closing* |
| | Wiring Instructions | *Dated within 30 days of land closing* |

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

# Addendum to Credit Application
# Information about Mortgage Loan Originators

Communications that relate to your credit application that will be submitted to a lender (the "Lender"), its status or other questions you may have about your application or the loan process, will be addressed by the Lender's designated representative.

The retailer from whom you may purchase a home and its sales consultants may assist you with matters associated with the sales transaction - for example, the type of home to purchase, options, site improvements, sales features that may impact your financing options, etc.

During the sales process, if there are questions that may impact the financing of your purchase, your sales consultants may conference or connect you and the appropriate representative(s) of the Lender for your convenience.

Following the receipt of your credit application, a representative from the Lender may contact you to discuss your application. Should you have any questions about your application, please contact the Lender at 1-866-701-0467.

By signing below, you acknowledge that you have read and understood the details provided, and also consent to the Lender sharing the decision of your credit application and other necessary personal and financial information with the seller of your home and/or land in order to facilitate your sales transaction and other legitimate purposes. Below is a list of Vanderbilt Mortgage and Finance, Inc. Loan Originators.



| Name | NMLS# | Name | NMLS# | Name | NMLS# |
|------|-------|------|-------|------|-------|
|      |       |      |       |      |       |

Carson Thomas Nettle

9-23-2022

Applicant Signature                                    Date

_____          _____

Applicant Signature                                    Date

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

NMLS#: 1561

## Vanderbilt Mortgage and Finance, Inc. (Vanderbilt)
## Emailing, Texting, and Cell Phone Consent

| **Benefits of email and text?** |
| :---: |
| • **Provide status updates on your home loan** |
| • **Alert you if additional information is needed** |

## Check your preferred contact number below

Applicant (print):                    Carson Thomas Nettle

Cell Phone # (include area code): ☐ ███████████

Email Address (print):                 ███████████

Co Applicant (print):

Cell Phone # (include area code): ☐

Email Address (print):

**Texting**: By providing your cell phone number and signing below, you are consenting to Vanderbilt contacting you regarding your credit application and the processing of your loan through your cell phone by way of text messaging (including SMS text or similar messaging) and calls to your cell phone, which may include text messages initiated using an auto-dialer. By consenting, you understand that your cell phone provider may impose charges for text messaging to your cell phone.

**Emailing**: By providing your email address and signing below, you are consenting to Vanderbilt delivering certain types of information related to your credit application to you through your email address. Some of the information delivered may include non-public personal information about your credit application, which Vanderbilt may elect to send to you in a secure email. While Vanderbilt is committed to the security of your information, you agree to take precautions to ensure the safety, security, and integrity of your information, as well. For example, you agree not to allow others to access the username and password that you establish to view the secure email, unless you authorize that person to access your information. By consenting, you understand that your cell phone provider may impose charges for emails sent to your cell phone.

**Notice** - **You are not required to sign this Consent as a condition to processing your application or obtaining credit.** Unless you are otherwise notified, any text messages, calls, or emails will be related to your pending application and not to any advertising, marketing or the solicitation of other products, services or promotions. The emailed information described above will also be mailed to you unless you agree to transact business with us electronically in which case the information will be electronically delivered only. Should you wish to discontinue Vanderbilt's text messaging, other communication to your cell phone, or emailing, you should contact Vanderbilt at 1-800-738-2127 and advise Vanderbilt to discontinue such contacts. *You must maintain your current cell phone number and email address with us. If you need to update your cell phone number or email address, please access your VMF online account at vmf.com or call 1-866-701-0467.*

By signing below, you acknowledge that you have read and understood the details provided above.

Applicant: **Carson Thomas Nettle**                    Date: 9-23-2022
(Signature)

Co-Applicant: _____               Date: _____
(Signature)

VMF Emailing, Texting, and Cell Phone Consent - 2573 - 1/2021 - 28EmailTextConsentForm          NMLS#: 1561 eApp

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

# Applicant Authorization

## Part I - General Information

| | |
|---|---|
| 1. Applicant(s)<br>**Carson Thomas Nettle** | 2. Name and Address of Lender<br>**Vanderbilt Mortgage and Finance, Inc.**<br>**500 Alcoa Trail**<br>**Maryville, TN 37804** |
| | Date |

## Part II - Applicant Authorization

I hereby authorize Lender, its successors and assigns, and, if applicable, the U.S. Department of Housing and Urban Development (HUD)/Federal Housing Administration (FHA) to use my information for any purpose relating to the origination, servicing, loss mitigation, and/or disposition of the mortgage or the property securing the mortgage and/or any HUD/FHA insurance claim. I authorize Lender and its successors and assigns to verify my past and present employment earnings records, bank accounts, stock holdings, and any other asset balances that are needed to process my loan application. I authorize Lender and its successors and assigns to order a consumer credit report and verify other credit information, including past and present mortgage and landlord references. It is understood that a copy of this form will also serve as authorization.

## Part III - Borrower Consent To The Use of Tax Return Information

I understand, acknowledge, and agree that the Lender and Other Loan Participants can obtain, use and share tax return information for purposes of (i) providing an offer; (ii) originating, maintaining, managing, monitoring, servicing, selling, insuring, and securitizing a loan; (iii) marketing; or (iv) as otherwise permitted by applicable laws, including state and federal privacy and data security laws. The Lender includes the Lender's affiliates, agents, service providers and any of aforementioned parties' successors and assigns. The Other Loan Participants includes any actual or potential owners of a loan resulting from your loan application, or acquirers of any beneficial or other interest in the loan, any mortgage insurer, guarantor, any servicers or service providers for these parties and any of aforementioned parties' successors and assigns.

*Carson Thomas Nettle*

| Borrower | 9-23-2022 |
|---|---|
| | Date |

| | |
|---|---|
| Borrower | Date |

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

# NOTICE & AGREEMENT TO TRANSACT BUSINESS ELECTRONICALLY

We want to transact business with you electronically because we believe it will be simpler and faster for you and us. By accepting this Notice And Agreement To Transact Business Electronically (the "Agreement"), the terms of which are more fully explained below, you are agreeing to transact business with us electronically. This includes you agreeing to let us provide communications, lending documents, sales documents, insurance documents, and other transaction and account-related documents to you via electronic means. It also includes you agreeing to use electronic signatures and electronic acknowledgments for the lending, sales, and insurance documents we provide to you.

You are not required to transact business with us electronically. If you decide now or in the future that you do not want to transact business with us electronically, you must notify us by either (i) calling our Credit Services personnel at 1-866-701-0467, or (ii), for VMF customers only, by changing your delivery preferences in the "My Loans" and/or "My Apps" section of the VMF Express Portal at www.vmf.com/portal. Such withdrawal of consent will be effective within five (5) business days after receipt by us, at which time you will start receiving paper copies of Communications and Transaction Documents that you no longer wish to receive electronically. Any Communications or Transaction Documents that you received electronically before the fifth business day after we receive the withdrawal of your consent will not be re-sent to you in paper form unless you specifically request a particular document. There is no charge for receiving paper copies of Communications or Transaction Documents. Withdrawing your consent to transact business with us electronically after having granted it will not affect the enforceability of any Communications or Transaction Documents we have already provided to you electronically. Declining to transact business with us electronically may result in transacting business with us via paper and other traditional means or, as permitted by law, termination of the business transaction.

## IMPORTANT DEFINITIONS

"We", "us", and "our" means Vanderbilt Mortgage and Finance, Inc. ("VMF"), CMH Homes, Inc., and HomeFirst Agency, Inc.

"Communication" means any information delivered by us to you regarding any loan from us to you, your account with us, the services and products we offer, and any loans, accounts, services, or products that may be available to you in the future.

"Transaction Documents" means any agreements, disclosures, notices, or other documents that we provide to you in accordance with applicable law and/or in connection with any loan from us to you, including any documents related to an account you have with us, or in connection with any sale by us to you, including insurance.

"Electronic means" means e-mail, our websites, text message, or other similar widely-used form of communicating electronically.

"Electronic signature" or "electronic acknowledgment" means symbols or other data in digital form attached to an electronically transmitted document as verification of a party's intent to sign the document or acknowledge having received the document.

## SCOPE

This Agreement applies to all Communications made available to you via electronic means. This Agreement also applies to all Transaction Documents for which your electronic acknowledgment and/or electronic signature is required.

## TRANSACTING BUSINESS ELECTRONICALLY

By accepting this Agreement, you agree that we may, but are not obligated to, provide Communications and Transaction Documents to you via electronic means. By accepting this Agreement, you also agree that you will use electronic signatures and electronic acknowledgments as required by the Transaction Documents. In addition, by accepting this Agreement, you acknowledge that:

- You have received this Agreement and have read and understood it.
- You are able to electronically access and electronically retain the Communications and Transaction Documents provided to you.

## REQUESTING PAPER COPIES

If we are required by law to provide a Communication or Transaction Document to you in writing, we will provide a paper copy to you upon request at no additional cost. To make such a request, please call 1-866-701-0467. We will not treat your request for a paper copy as you declining to transact business with us electronically unless, in addition to requesting a paper copy, you expressly and clearly state that you decline to further transact business with us electronically.

## SYSTEM REQUIREMENTS

To successfully transact business with us electronically, we recommend that you use the following operating systems, Internet browsers, and other software:

- A personal computer capable of accessing the Internet and sending and receiving e-mail.

Case 3:26-cv-05017-MDH    Document 1-1    Filed 03/06/26    Page 48 of 63

- A printer capable of printing copies of website information, Transaction Documents, and Communications for your records.
- Microsoft Windows 8.1 or later versions, iOS 12 or later, Android 8 or later, or Apple Mac OS 10.13 or 10.14 or later versions.
- An Internet browser that supports 128-bit encryption.

Our resources are best experienced with any of the following:

- Microsoft Edge Chromium or later versions
- Mozilla Firefox 78 or later versions
- Apple Safari 10 or later versions
- Google Chrome 2020 or later versions
- Adobe Reader 2020 or later versions or Adobe compatible software, so you can view Adobe PDF files. A free copy of a PDF reader is available at the following web address: http://get.adobe.com/reader/.

If our hardware or software requirements change, and that change would create a material risk that you would not be able to access or retain Communications and Transaction Documents electronically or use electronic signatures and electronic acknowledgments as required, we will notify you of such changes and give you the opportunity to withdraw your consent to transact business with us electronically. Continuing to transact business with us electronically as described herein after receiving notice of the change is reaffirmation of your agreement to transact business with us electronically.

## MAINTAINING CURRENT CONTACT INFORMATION

You must maintain your current contact information with us, including your current e-mail address, mailing address, and telephone number. Only you may change your contact information. If you need to update your contact information, please access your VMF online account at vmf.com or call 1-866-701-0467.

## CHANGES TO THIS AGREEMENT

We reserve the right to change the terms of this Agreement. If we make material changes to the terms of this Agreement, we will notify you by sending a notice to the e-mail address and/or mailing address associated with you in our records or by presenting a notice of the changes when you access your online account you have with us. However, if a change is necessary in order to protect the security of our or our customers' information, we reserve the right to make immediate changes without prior notice. We will notify you of such changes as soon as is reasonably possible after making such changes. We always reserve the right to waive or vary the terms of this Agreement on an individual basis.

If we give you advance notice of a change in the terms of this Agreement, you may accept the change by signing the updated Agreement and continuing to transact business with us electronically as contemplated by this Agreement, or you may decline to accept the change by declining to sign the updated Agreement, which will have the effect of terminating this Agreement but will not have the effect of terminating any transaction into which you and we have entered.

---

**I hereby agree to transact business with VMF electronically as set forth in this Agreement, including receiving Communications and Transaction Documents via electronic means and using electronic signatures and electronic acknowledgments as required by the Transaction Documents. I also hereby acknowledge that I have read and understood this Agreement, that I have access to the hardware and software described above, and that I am able to receive and review documents transmitted via electronic means and to use electronic signatures and electronic acknowledgments as contemplated in this Agreement.**

*Carson Thomas Nettle*

Date: 9-23-2022

Borrower: Carson Thomas Nettle

Date: _____

Borrower: _____

**My email address for purposes of this Agreement is:**

---

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

Case 3:26-cv-05017-MDH    Document 1-1    Filed 03/06/26    Page 49 of 63

# EQUAL CREDIT OPPORTUNITY ACT

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

**Date:** September 23, 2022

**Application No.:**

**Property Address:** ██████████████████████

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex *(includes discrimination or discouragement based on sexual orientation and/or gender identity, including discrimination based on actual or perceived nonconformity with sex-based or gender-based stereotypes and discrimination based on an applicant's or customer's associations)*, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this company is the

| |
|---|
| Federal Trade Commission<br>Equal Credit Opportunity<br>Washington, D.C. 20580 |

We are required to disclose to you that you need not disclose income from alimony, child support or separate maintenance payment if you choose not to do so.

Having made this disclosure to you, we are permitted to inquire if any of the income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are relying to qualify for the loan for which you are applying.

*Carson Thomas Nettle*
_____
Carson Thomas Nettle

9-23-2022
_____
Date

_____
Date

_____
Date

_____
Date

Vanderbilt ECOA Notification - 2145 - 3/2021 - 125EqualCreditOpportunityAct_eApp          NMLS# 1561

eApp

# NOTICE OF RIGHT TO RECEIVE
# APPRAISAL REPORT

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM

Creditor: Vanderbilt Mortgage and Finance, Inc.

Applicant: Carson Thomas Nettle

Date: September 23, 2022

Property Address: ███████████████████████

We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if your loan does not close.

You can pay for an additional appraisal for your own use at your own cost.

**Customer Service Department**
**Vanderbilt Mortgage and Finance, Inc.**
**P.O. Box 9800**
**Maryville, TN 37804**
**865-380-3000**

Electronically Filed - McDonald - January 23, 2026 - 02:37 PM



## WANT TO GET INFORMATION ABOUT OTHER PRODUCTS AND SERVICES?

**Emailing**: Vanderbilt may contact me by sending marketing material and information about its and its affiliates' products and services through my email address. **Vanderbilt will not send any emails unless I have filled in my email address and explicitly consented with my signature below**.

Applicant's email address: ██████████████

Co-Applicant's email address: _____

*Should you wish to discontinue Vanderbilt's emailing regarding its products and services unrelated to the credit for which you have applied to your email address, please follow the instructions in any email we send you to unsubscribe.*

By signing below, I **(1)** acknowledge that I have read this notice and understand my rights and obligations with respect to the matters covered herein; **(2)** consent to Vanderbilt's sending emails to email addresses that I have disclosed to Vanderbilt; and **(3)** understand that my consent is not required as a condition of credit, the terms of credit or purchase.

Carson Thomas Nettle
_____      9-23-2022
Applicant Signature                                         Date

_____      _____
Co-Applicant Signature                                   Date

Marketing Consent Form - 3048 - 5/2020 - 46MarketingConsentForm                    eApp - NMLS # 1561

# 2024 PERSONAL PROPERTY

26MC-CV00092



3

Taxes can be paid in person or in the drop box at the Collector's office at ████████████████████ ., online @ www████████████collector.com, by phone, or by mail. Envelope must be postmarked on or before December 31, 2024, to avoid penalties.

████████████ **Collector**

**NETTLE, CARSON**

**ACCOUNT#:** ██████████    AO 11/14/2024

**DELINQ YEARS:**
2023

| Tax District | Levy per $100 | Total Tax |
|---|---|---|
| STAT | 0.0300 | 1.99 |
| LIB | 0.0973 | 6.44 |
| CNTY | | |
| R1 | 3.4200 | 226.40 |
| CC | 0.4163 | 27.56 |
| WRFIRE | 0.3000 | 19.86 |
| LAC | | 75.00 |

### Property Description

| Year | Type/Vehicle Description | Val | Tax |
|---|---|---|---|
| 2023 | CMHM 76X16 | 6620 | 282.25 |

| | |
|---|---|
| **OTHER PROPERTY** | 0 |
| **TOTAL VALUATION** | 6,620 |

Taxes are delinquent after December 31st. Penalties increase monthly January thru September. Failure to receive a tax statement does not exempt you from paying taxes when due.

| **Total Due:** | 357.25 |
|---|---|

*Non-clearance of check voids receipt.*
Upper portion of this tax statement should be retained for your records until receipt is received.
**Tear or cut along the perforation and return bottom portion with payment**

---

**DELINQ. YEARS: 2023**

2024 ████████ COUNTY PERSONAL PROPERTY STATEMENT
*MAKE CHECKS PAYABLE TO*
████████████ *COLLECTOR*

**NETTLE, CARSON**

Enter Amount Paid:
$_____   Check _____   Cash _____

**Pay this total:** _____ 357.25

***1-304371-0***    AO 11/14/2024

| | | | |
|---|---|---|---|
| JAN | 397.20 | JUL | 443.92 |
| FEB | 404.98 | AUG | 451.71 |
| MAR | 412.77 | SEP | 459.50 |
| APR | 420.55 | OCT | 459.50 |
| MAY | 428.35 | NOV | 459.50 |
| JUN | 436.13 | DEC | 459.50 |

Electronically Filed - MCDONALD - March 02, 2026 - 11:30 AM

## IN THE CIRCUIT COURT OF McDONALD COUNTY
## STATE OF MISSOURI

|  |  |  |
|---|---|---|
| CARSON THOMAS NETTLE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 26MC-CV00092 |
| | ) | |
| CMH HOMES, INC., | ) | |
| | ) | |
| VANDERBILT MORTGAGE AND | ) | |
| FINANCE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY OF APPEARANCE

COME NOW, Michael K. Daming and Evelyn I. Sims and the law firm of Wasinger Daming, LC., and hereby enter their appearance on behalf of Defendants, Clayton Homes of Neosho, CMH Homes, Inc. and Vanderbilt Mortgage and Finance, Inc.

/S/Evelyn I. Sims
Michael K. Daming, MoBar #52864
Evelyn I. Sims, MoBar #60410
WASINGER DAMING, LC
CIBC Place, Suite 875
1401 South Brentwood Boulevard
St. Louis, Missouri 63144
(314) 961-0400
(314) 961-2726 FAX

Attorneys for Defendants CMH Homes, Inc.
and Vanderbilt Mortgage and Finance, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of March 2026, a true and accurate copy of the forgoing was served via the court's electronic filing system and/or via electronic mail to:

Christian Misner
Donner Applewhite
5205 Hampton Ave.
St. Louis, MO 63109
Christian.misner@da-lawfirm.com
Attorney for Plaintiff

*/S/Evelyn I. Sims*

**IN THE CIRCUIT COURT OF MCDONALD COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| CARSON THOMAS NETTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLAYTON HOMES OF NEOSHO, | ) | 26MC-CV00092 |
| a business operating in Missouri | ) | |
| d/b/a CLAYTON HOMES #689, | ) | |
| CMH HOMES, INC., | ) | |
| a Tennessee corporation, and | ) | |
| VANDERBILT MORTGAGE | ) | |
| AND FINANCE, INC., | ) | |
| a Tennessee corporation, | ) | |
| | ) | |
| Defendants | ) | |

### MOTION FOR ADMISSION *PRO HAC VICE* OF SPENSER TEMPLETON

Comes now Evelyn Sims, as a member in good standing with the Missouri State Bar and as local counsel in this matter and, pursuant to Rule 9.3 of the Missouri Rules for Admission to the Practice of Law, respectfully moves this court to grant Spenser Templeton, an attorney who is not a member of the Missouri State Bar but is currently licensed and authorized to practice law in the State of Alabama, the privilege to appear in this Court as an attorney on behalf of the Defendant, CMH Homes, Inc., in the above matter.

1. A Verified Statement of Application for Admission *Pro Hac Vice*, attached hereto as Exhibit A, is submitted in support of this Motion and has been provided to the Missouri State Bar.
2. Pursuant to Rule 9.3 of the Missouri Rules for Admission to the Practice of Law, a Statement of Local Attorney is attached hereto as Exhibit B.
3. The undersigned verifies that a copy of this Motion and the required application fee of Three Hundred Five and no/100 Dollars ($305.00) for this civil matter has been submitted to the Missouri State Bar pursuant to Rule 9.3 of the Missouri Rules for Admission to the Practice of Law.

WHEREFORE, Evelyn Sims respectfully requests that the Motion for Admission *Pro Hac Vice* of Spenser Templeton be granted and that she be admitted as counsel *Pro Hac Vice* in this matter on behalf of Defendant CMH Homes, Inc.

Dated March 2nd , 2026

_____
Evelyn Sims MoBar #60410
Wasinger Daming, LC
1401 S. Brentwood Blvd.
CIBC Place, Suite 875
St. Louis, MO 63144
(314) 338-8305 (telephone)
esims@wasingerdaming.com

Electronically Filed - MCDONALD - March 02, 2026 - 11:30 AM

Certificate of Service

The undersigned hereby certifies that on this 2nd day of March 2026, a true and accurate copy of the forgoing was served via the court's electronic filing system and/or via electronic mail to:

Christian Misner
Donner Applewhite
5205 Hampton Ave.
St. Louis, MO 63109
Christian.misner@da-lawfirm.com
Attorney for Plaintiff

/s/ Evelyn I. Sims

IN THE CIRCUIT COURT OF MCDONALD COUNTY
STATE OF MISSOURI

CARSON THOMAS NETTLE, )
)
Plaintiff, )
)
v. )
)
CLAYTON HOMES OF NEOSHO, )          26MC-CV00092
a business operating in Missouri )
d/b/a CLAYTON HOMES #689, )
CMH HOMES, INC., )
a Tennessee corporation, and )
VANDERBILT MORTGAGE )
AND FINANCE, INC., )
a Tennessee corporation, )
)
Defendants )

**VERIFIED STATEMENT OF APPLICATION FOR ADMISSION *PRO HAC VICE* OF SPENSER TEMPLETON**

Pursuant to Rule 9.3 of the Missouri Rules for Admission to the Practice of Law in the State of Missouri, I, Spenser Templeton, being duly worn, hereby respectfully apply for admission *pro hac vice*, and state as follows:

1. This statement is submitted in support of my application for admission *pro hac vice* as counsel for Defendant, CMH Homes, Inc., in the above styled action.
2. I am an attorney with the law firm of Simpson, McMahan, Glick and Burford, PLLC in its office located at 100 Concourse Parkway, Suite 310 West, Hoover, Alabama 35244, telephone number (205) 876-1600.
3. I am an active member in good standing of the Alabama State Bar. My Alabama State bar number is 5104V19U.
4. The Name, address and telephone number of the disciplinary agent of Alabama State Courts is the Alabama State Bar, 415 Dexter Avenue Montgomery, Alabama 36104, telephone number (334) 269-1515. I have never been the subject of any disciplinary hearing and have never been disciplined at any time by any court or bar.
5. The Alabama State Bar extends a reciprocal courtesy or privilege to members of the Missouri State Bar for *pro hac vice* admissions as is being sought by this applicant.
6. I have not been involved in any disciplinary matters before a Missouri tribunal or body in the preceding twenty-four (24) months.



EXHIBIT
A

7. The responsible local attorney for this matter is Evelyn Sims, who is a member of the Missouri State Bar and a member of the law firm of Wasinger Daming, LC, 1401 S. Brentwood Blvd., CIBC Place, Suite 875, St. Louis, MO 63144. The telephone number of Wasinger Daming, LC is (314) 338-8305. Ms. Sims agrees to participate in this matter as required by Rule 9.3 and as evidenced by his respective *Statement of Local Counsel*.

8. If admitted *pro hac vice* in this action, I will comply with all laws, rules, and regulations of Missouri State and local governments, where applicable, including taxing authorities and any standards for pro bono civil and criminal indigent defense legal services, as well as complying with the requirements of the Missouri Rules of Professional Conduct and the Court's Rules of Decorum.

9. A copy of this Verified Statement has been submitted, and the $305.00 fee has been paid to the Missouri State Bar.

I declare under penalty of perjury that the foregoing is true and correct.

Dated March 2nd, 2026

Spenser Templeton
Simpson, McMahan, Glick & Burford, PLLC
100 Concourse Parkway, Suite 310 West
Hoover, AL 35244
Tel. (205) 876-1612
stempleton@smgblaw.com

Sworn to and subscribed before me this the 2nd day of March 2026.

Casey Leigh Hill
Notary Public in and for The State of Alabama

My Commission Expires: 07/23/2028

Electronically Filed - MCDONALD - March 02, 2026 - 11:30 AM

# Alabama State Bar



415 DEXTER AVENUE
POST OFFICE BOX 671
MONTGOMERY, AL 36101

## CERTIFICATE OF GOOD STANDING

Occupational License

**STATE OF ALABAMA**
**COUNTY OF MONTGOMERY**

*I, Terri B. Lovell, Secretary of the Alabama State Bar and custodian of its records, hereby certify Spenser Hope Templeton has been duly admitted to the Bar of this State and is entitled to practice in all of the courts of this State including the Supreme Court of Alabama, which is the highest court of said state.*

*I further certify that Spenser Hope Templeton was admitted to the Alabama State Bar on September 24, 2015.*

*I further certify that said Spenser Hope Templeton is presently a member in good standing of the Alabama State Bar, having met all licensing requirements for the year ending September 30, 2026.*

*IN WITNESS WHEREOF, I have hereunto set my hand and the seal of the State of Alabama on February 05, 2026.*

Terri B. Lovell, Secretary



## IN THE CIRCUIT COURT OF MCDONALD COUNTY
## STATE OF MISSOURI

CARSON THOMAS NETTLE,      )
                                          )

Plaintiff,                 )
                                          )

v.                             )
                                        )

CLAYTON HOMES OF NEOSHO,    )                    26MC-CV00092
a business operating in Missouri  )
d/b/a CLAYTON HOMES #689,     )
CMH HOMES, INC.,             )
a Tennessee corporation, and    )
VANDERBILT MORTGAGE       )
AND FINANCE, INC.,          )
a Tennessee corporation,       )
                                          )

Defendants              )

## STATEMENT OF LOCAL ATTORNEY

I, Evelyn Sims, pursuant to Rule 9.3 of the Missouri Rules for Admissions to the Practice of Law, hereby endorse the Verified Statement of Application for *Pro Hac Vice* Admission of Spenser Templeton. I agree to participate in the present civil action as responsible local attorney for Defendant CMH Homes, Inc., as required by Rule 9.3. I certify that I am an attorney in good standing, I am admitted to practice law in the State of Missouri, and I maintain an actual physical office equipped to conduct practice of law in the State of Missouri located at 1409 S, Brentwood Blvd., CIBC Place, Suite 875, St. Louis, MO 633144.

Dated March 2, 2026

Evelyn Sims MoBar #60410
Wasinger Daming, LC
1401 S. Brentwood Blvd.
CIBC Place, Suite 875
St. Louis, MO 63144
(314) 338-8305 (telephone)
esims@wasingerdaming.com



Electronically Filed - MCDONALD - March 02, 2026 - 11:30 AM

IN THE CIRCUIT COURT OF MCDONALD COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| CARSON THOMAS NETTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLAYTON HOMES OF NEOSHO, | ) | 26MC-CV00092 |
| a business operating in Missouri | ) | |
| d/b/a CLAYTON HOMES #689, | ) | |
| CMH HOMES, INC., | ) | |
| a Tennessee corporation, and | ) | |
| VANDERBILT MORTGAGE | ) | |
| AND FINANCE, INC., | ) | |
| a Tennessee corporation, | ) | |
| | ) | |
| Defendants | ) | |

## ORDER GRANTING ADMISSION *PRO HAC VICE*

On the _____ day of March 2026, the court considered Spenser Templeton's Motion for *Pro Hac Vice*. The court, after considering the pleadings, the motion and the evidence filed in support of said motion, GRANTS the motion.

Therefore, the Court ORDERS:

Spenser Templeton be granted her Motion *Pro Hac Vice* and is allowed to appear before this court until the conclusion of this action.

_____
**HONORABLE JUDGE PRESIDING**