# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | |
|---|---|
| CARSON THOMAS NETTLE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )  Case No.  3:26-cv-05017-MDH |
| | ) |
| CLAYTON HOMES OF NEOSHO d/b/a | ) |
| CLAYTON HOMES #689, | ) |
| CMH HOMES, INC., and | ) |
| VANDERBILT MORTGAGE | ) |
| AND FINANCE, INC., | ) |
| | ) |
| **Defendants.** | ) |

## <u>ORDER</u>

Before the Court is Defendants' Motion to Compel Arbitration and Stay Litigation. (Doc. 9, 14). Defendants request that the Court stay this action and compel arbitration of the claims asserted in Plaintiff's Complaint. Plaintiff has responded and does not oppose the motion.

## BACKGROUND

This case is about a factory-built, manufactured home that the Plaintiff bought from CMH on October 18, 2022. The Plaintiff bought the home from CMH's retail lot in Neosho, Missouri. The home was built by CMH Manufacturing at its manufacturing facility in Bonham, Texas. The Plaintiff financed the purchase of the home through Vanderbilt Mortgage and Finance, Inc.. After its construction, the home was installed on the Plaintiff's property located at 633 Pete Clark Lane, Pineville, Missouri. As part of the home purchase, the Plaintiff executed the Binding Dispute Resolution Agreement ("BDRA") with CMH.

1

After the Plaintiff moved into his home, he became involved in a dispute with CMH about the home delivered and installed on the Plaintiff's property and the purchase of the home. That dispute resulted in this litigation, where Plaintiff brings six claims against CMH: Count I – Violation of the Missouri Merchandising Practices Act; Count II- Breach of Contract; Count III- Fraud and Fraudulent Misrepresentation; Count IV – Fraudulent Concealment; Count VI – Unjust Enrichment; and Count VII – Negligent Misrepresentation.

**STANDARD**

The Supreme Court has stated that arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration if she did not agree to submit it. *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Products*, 359 F.3d 954, 955-56 (8th Cir. 2004), citing, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Court "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement. *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008) (internal citations omitted). There are two gateway questions of "arbitrability" for the Court to decide. *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Products*, 359 F.3d at 956 (internal citations omitted). First, "whether the parties have a valid arbitration agreement that binds them is a question for judicial determination." *Id*, citing, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-46, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Second, whether "a valid arbitration agreement applies to the subject matter at hand is a question for a court to answer." *Id.*, citing, *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651-52, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). It is clear federal policy generally

2

favors arbitration and Courts should resolve any doubts regarding issues of arbitrability in favor of arbitration. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999) (internal citations omitted). However, the Court must also look to the intent of the contracting parties and determine whether the agreement was reached by consent and not coercion. *Id*. As previously stated, a party cannot be forced to submit to arbitration a dispute that she has not agreed to arbitrate. *Id*.

**DISCUSSION**

**A. FAA**

"Arbitration is a matter of contract, and 'arbitrators derive their authority to resolve disputes only because the parties have agreed' to it." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d at 700, citing, *AT & T*, 475 U.S. at 648–49, 106 S.Ct. 1415. If an agreement does exist, the Court can determine whether the dispute falls within the scope of that agreement. *United Steelworkers of Am. v. Duluth Clinic*, Ltd., 413 F.3d 786, 788 (8th Cir. 2005). Federal courts are bound by the provisions of the Federal Arbitration Act ("FAA") in cases involving interstate commerce. *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995 (8th Cir. 1972). The FAA applies to any arbitration agreement executed in connection with a transaction that involves interstate commerce. See 9 U.S.C. §§ 1, 2; *see also State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015)(internal citations omitted).

Under the FAA, a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When parties agree in writing that the FAA applies, courts have respected that agreement. *See, e.g., Jones v.*

*GGNSC Pierre LLC*, 684 F. Supp. 2d 1161 (D.S.D. 2010); *Pickering v. Urbantus*, LLC, 827 F. Supp. 2d 1010 (S.D. Iowa 2011); *Keeling v. Preferred Poultry Supply*, LLC, 621 S.W.3d 672 (Mo.App. S.D. 2021) (finding FAA applied because the contract itself created "a prima facie showing that the FAA applies and compels arbitration" and held that "the Federal Arbitration Act ('FAA') applies as the parties had agreed.").

Defendant argues a valid arbitration agreement was executed in connection with the house transaction. Plaintiff does not object.

Here, the arbitration provision in the BDRA states that it is governed by the FAA:

> E. Conducting Arbitration: Any Party to this Agreement may commence arbitration at any time following Mediation, subject to the applicable statute of limitations and section "C." of this Agreement. **The Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. § 1, et seq.**, and to the extent not otherwise preempted by the FAA, by applicable state laws, including common law; (b) this Agreement; and (c) the Rules. The Parties acknowledge and agree that the Home contains component parts limitation manufactured outside of the state where the Home is sold and delivered; the manufacture, transportation, and sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce.

(Ex. 1B, BDRA, ¶ E) (emphasis added).

Even if the arbitration provision did not specify, the Court finds that the FAA applies because Plaintiff's home has travelled through interstate commerce. It was constructed in Texas from parts manufactured across the United States and was then shipped to Missouri. The parties agreed that the FAA applies and the home travelled through interstate commerce thus, the Court finds the FAA applies.

**B. Enforceability of Arbitration Agreement**

4

"By enacting the FAA, Congress reversed 'longstanding judicial hostility' toward arbitration agreements and adopted a liberal policy favoring enforcement thereof." *Swain v. Auto Services, Inc.*, 128 S.W.3d 103, 107 (Mo. App. E.D. 2004) (citing Gilmer v. Interstate Johnson Lane Corp., 500 U.S. 20, 24 (1991)); see also, *Perry v. Thomas*, 482 U.S. 483 (1987). Under the FAA, an arbitration agreement is valid, irrevocable, and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. (quoting 9 U.S.C. § 2). Therefore, courts use ordinary rules of contract interpretation to determine whether a valid, enforceable agreement to arbitrate exists. *Id*.

Courts apply standard contract formation principles when evaluating parties' agreements to be governed by the FAA. "[O]rdinary contract principles govern whether parties have agreed to arbitrate" under the FAA. *Patterson v. Tenet Healthcare*, Inc., 113 F.3d 832 (1997). "Under Missouri law, the essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." *Wilder v. John Youngblood Motors, Inc.*, 534 S.W.3d 902, 908 (Mo. Ct. App. 2017). Defendant asserts the BDRA was offered to and accepted by the Plaintiff and argues his signature on the BDRA acknowledges that he "read, understood, and agreed to be bound" by the BDRA and thus assented to its terms. *See Mead v. Moloney Sec. Co.*, 274 S.W.3d 537, 542 (Mo.App. E.D. 2008) (ruling a party who signs a contract is presumed to have assented to its terms). Plaintiff has failed to challenge offer and acceptance, thus based on Defendants' representations, the Court fins there was valid offer and acceptance.

As for consideration, Defendants argue and the Court agrees, that the BDRA is a mutual promise to arbitrate between the Plaintiff and CMH: both parties must arbitrate any claims they have against the other "arising out of or related to" the Plaintiff's home (subject only to the BDRA's Section K carveout, which allows for judicial processes for the seller to repossess the

5

home or to obtain equitable relief to preserve the home). *See Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 117 (Mo. banc 2018) abrogated on other grounds by *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432 (Mo. banc 2020) (finding that sufficient consideration exists when there is a mutual promise to arbitrate and neither party retains a unilateral right to amend the provision or avoid its obligations).

For the reasons stated, the Court finds that there was an offer, acceptance, and bargained for consideration in this case.

### C. Scope of Arbitration Agreement

Any questions as to the scope of arbitrable issues must be resolved under the guidance of federal policy, in favor of arbitration. *Ellington v. Motors*, 560 S.W.3d 72, 77 (Mo. App. W.D. 2018) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Defendant argues Plaintiff's claims are each within the scope of the BDRA because all claims "aris[e] out of or relate to" the Plaintiff's home. (Ex. 1B, BDRA, ¶ A). Plaintiff brings no challenge to the scope of the BDRA.

The BDRA's scope is broad and expressly applies to "all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller… arising out of or related to (i) the manufactured home purchased… (ii) the documents related to the purchase and sale of the Home… (iii) any products, goods, services… sold under or referred to in the Contract… (iv) any events leading up to the Contract… (v) the collection and servicing of the Contract… and (vi) the interpretation, scope, validity, and enforceability of the Contract." (Ex. 1B, BDRA, ¶ A). Plaintiff's allegations against CMH concern the identity of the Home sold, representations made during the sale, installation issues, documentation surrounding the transaction, and other conduct

occurring before, during, or after execution of the Sales Agreement. The claims asserted against CMH arise solely from the home sale transaction and from CMH's conduct in connection with the sale, delivery, documentation, and installation of the Home. Thus, the Court finds the BDRA encompasses all of Plaintiff's claims.

### D. Stay Pending Arbitration

Generally, the FAA requires a federal district court to stay an action pending an arbitration rather than dismissing it. *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011); citing 9 U.S.C. § 3 (stating district courts "shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). For the reasons stated herein, the Court finds Plaintiff's claims are subject to arbitration pursuant to the BDRA. As a result, the Court grants Defendant's request to stay these proceedings and compel the parties to proceed with arbitration of Plaintiff's claims.

### CONCLUSION

WHEREFORE, for the reasons stated herein, the Court hereby GRANTS Defendants' Motion and compels this case to arbitration. Finally, the Court STAYS the case pending arbitration. The parties are ORDERED to update the Court within 30 days of the conclusion of arbitration.

At this time, as the case will be stayed, the Court will not rule on the pending Motions to Strike. (Docs. 2, 12).

**IT IS SO ORDERED.**

Date:  April 22, 2026                                    /s/ Douglas Harpool
                                                        **DOUGLAS HARPOOL**
                                                        **UNITED STATES DISTRICT JUDGE**

7